Argued and submitted October 7, remanded in part; otherwise affirmed
November 20, 1996

In the Matter of the Marriage of

Donna L. LANDSEM,
*Respondent,*
*and*

Bruce L. LANDSEM,
*Appellant.*

(95C-31455; CA A92096)

927 P2d 625

J. Michael Alexander argued the cause for appellant. With him on the brief was Burt, Swanson, Lathen, Alexander, McCann & Smith, P.C.

Tammy M. Dentinger argued the cause for respondent. With her on the brief were John L. Hemann and Garrett, Hemann, Robertson, Paulus, Jennings & Comstock, P.C.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

**LEESON, J.**

Husband appeals from a dissolution judgment, challenging the trial court's division of the marital property and its award of spousal support to wife. We remand for entry of judgment recalculating the equalizing judgment and modifying spousal support.

We recite the facts as of the time of trial in 1995. The parties were married for 17 years. Husband is 49 years old and wife is 55. Wife was awarded custody of the parties' child, age 16. Husband is a car and truck salesman who earns an average gross monthly income of $1,873 plus benefits that include reimbursement of his expenses, medical and dental insurance, the payment of his residential and cellular telephone bills, and payment of gas, maintenance and insurance for his car. Wife works as a seasonal employee for a department store and earns approximately $823 per month, gross. She has health problems that include a history of anxiety disorder and an irregular heartbeat that is treatable with prescription medication, but there is no evidence that these problems are incapacitating or prevent her from being employed full time.

Husband's mother (Landsem) owns over 100 acres of farmland in Clackamas County. Both before and during the marriage, husband occasionally helped Landsem with the operation of the farm without receiving any salary. At one point, husband and Landsem had a joint checking account that was used for farming expenses. In November 1975, husband purchased and took title in his name only to a 40-acre parcel adjacent to Landsem's property. He testified that he purchased the land for Landsem with her money, because the owners of the property were unwilling to sell it to her. He further testified that both before and during the marriage the property actually belonged to Landsem. After he and wife had been married for approximately two years, husband deeded a one-half interest in the property to wife, listing "gift" as the consideration for the transfer.[1] In 1986, a year

---

[1] There was conflicting testimony about husband's transfer of the property to wife and the reasons behind it. Husband testified that he told wife that he was

after the mortgage on the property was paid off, husband deeded his remaining one-half interest in the property to Landsem, telling her that he "didn't want his name on the property any longer." As a consequence of that transfer, only wife and Landsem's names appeared on the title. Both husband and wife testified that they made no payments toward the property, nor did they receive any income from it. Some of the expenses associated with the property were paid from Landsem and husband's joint farm account, the property tax statements list Landsem and wife as equal owners and the parties listed wife's interest in the property on financial reports, including a Key Bank financial statement completed in 1988.

For most of the marriage, husband owned and operated a car dealership, earning approximately $40,000 per year. Wife, a high school graduate with one term of college education and a few years of secretarial and office management experience, went to work for the dealership in 1980. She performed a variety of tasks, including managing the accounts payable, handling customer complaints and hiring and firing some personnel. She earned between $20,000 and $24,000 per year.

In 1991, the dealership lost some of its financing and began to fail. In November of that year, the dealership was unable to deliver a car that had been ordered by a customer until wife's mother (Grayson) gave the dealership $9,818.96 to help pay the purchase price. The parties did not sign a promissory note for the money from Grayson, but both husband and wife testified that it was a loan. Husband testified that at the time of the loan, Grayson was "very, very concerned that she would get the money back" and that she was paid in full after the car was delivered to the customer. Wife testified that Grayson's loan had not been repaid, although she acknowledged that the loan had been a business debt and that all of the dealership's debts had been paid off or resolved in some other way. Grayson did not testify at the trial.

---

putting her name on the property, but that it still belonged to Landsem and was part of her estate planning. Wife testified that she understood that husband "wanted to deed the property as a gift[,] being [a] 'what I own, you own' type of situation."

Despite Grayson's help, the parties were forced to sell part of the dealership and dissolve the rest of it in December 1991. Thereafter, husband sold vehicles for two different dealerships simultaneously, earning a gross monthly income of approximately $3,200. The parties separated in June 1994, and husband moved out of the family home. Two months after the separation, husband filed for personal bankruptcy. In the fall of 1994, after almost two years with both dealerships, husband quit working for one of them and, as a result, his income decreased to its level at trial. After the loss of the dealership, wife was unable to find work until November 1995, when she began working at a department store. Wife testified that she has been unable to find clerical work because of her lack of experience with computers. She estimated that she needs three to five terms of classes at the local community college to obtain the necessary skills.

From August 1994 until November 1995, husband paid wife support totaling $10,879.58 and made monthly mortgage payments of $278 on the family home. Husband testified that he was able to meet those obligations only by borrowing money from Landsem. Landsem testified that she had given husband and wife gifts of money in the past, but that her payments to husband of approximately $25,259 from June 1994 through November 1995 were loans. She testified that husband had executed promissory notes for the approximate balance, but admitted that husband had not made any payments toward the balance, that she had not charged any interest and that she would not sue him for the balance unless she needed the money.

After husband moved out, wife also received money from Grayson. She testified that Grayson loaned her approximately $10,777 to assist with living expenses. She produced no notes, checks, or other records documenting those advances, but testified that she calculated the total she owed her mother by determining the amount of money she had withdrawn from a joint checking account that she shared with Grayson.

The trial court found that Landsem and wife were equal co-owners of the 40-acre farm property. It awarded wife's one-half interest in the property to husband and

awarded the family home to wife. It ruled that all monies advanced by Landsem to husband were gifts, but that there were marital debts to Grayson both for the 1991 car loan ($9,818.96) and for the $10,777 that she had loaned to wife after the parties separated. The court assigned to wife debt in the amount of $20,596, which offset wife's property award by that amount. The court then awarded an equalizing judgment of $3,646.50[2] to husband, because wife had received more property than he had.

With respect to the parties' incomes, the trial court found that husband's earning capacity was $2,200 per month and that wife would be able to obtain an entry-level job where she could earn approximately $1,500 per month after she received the appropriate computer training. It set spousal support at $750 per month for two years, $350 per month for the following two years, and $150 per month thereafter. The court acknowledged that, with the addition of his required child support payment of $135, husband would find it difficult to make monthly payments of $750 for the first two years, and that he might have to seek additional employment or work longer hours at the dealership. However, the court noted that the amount it ordered was not "substantially higher" than what husband had been paying during the previous 18 months.

Husband assigns error to the trial court's division of property and its award of spousal support. He first argues that Landsem and wife were not co-owners of the 40-acre farm property, that the "uncontroverted facts" show that the property belonged to Landsem alone and, therefore, that the property should not have been considered in the parties' property division. Husband also contends that the trial court erred in treating the monies advanced by Grayson as loans but the monies advanced by Landsem as gifts. According to husband, the advances should be treated the same, either as gifts or loans. He argues that although Landsem was not a party to the divorce, "she has in essence borne its financial

---

[2] The trial court's letter opinion notes that "[w]ife owes husband $7,921," which was the difference in the property division. The equalizing judgment was for one-half that sum.

burden, through an inappropriate disposition of her land, and a failure to recognize her expenditures."

Wife responds that the trial court correctly awarded husband her one-half interest in the 40-acre farm property, because all the documentary evidence shows that wife owned a one-half interest in the property at the time of the divorce. Finally, she argues that the only evidence to the contrary comes from husband's testimony and that the trial court properly disregarded it. She contends that the trial court correctly treated the cash advances differently, because Grayson had a history of loaning the parties money and Landsem had a history of giving it to them.

In reviewing a dissolution judgment, our task is to ensure a division of marital property that is "just and proper" in all the circumstances. ORS 107.105(1)(f); *Miller and Miller*, 294 Or 660, 665, 661 P2d 1361 (1983). Any property that is owned by either party is subject to division under such a judgment. *Howard and Howard*, 92 Or App 347, 349, 758 P2d 416, *rev den* 307 Or 101 (1988). Although our review is *de novo*, ORS 19.125(3), we give proper deference to the trial court, which had the opportunity to see and hear the witnesses. *Moe and Moe*, 66 Or App 947, 949, 676 P2d 336 (1984).

Here, the trial court reviewed the evidence and heard the testimony of husband, wife and Landsem. It determined that wife owned a one-half interest in the 40-acre farm property and awarded that interest to husband. The trial court did not err. The record shows that wife had a one-half interest in the 40-acre parcel. The deed, property tax statements and the parties' listing of the property as an asset on various financial statements that they relied on to improve their ability to obtain financing for the dealership are evidence of wife's interest. Although Landsem made all the payments related to the property, some of those payments were made from the joint account she held with husband. There is also no evidence that Landsem ever asked to have wife's one-half interest conveyed to her in the 20 years that either husband or wife held title to some portion of the property. The

trial court did not err in considering the 40-acre farm property in the parties' property division and in awarding to husband wife's one-half interest in that property.

■■ With respect to husband's argument concerning the funds the parties received from their mothers, however, we conclude that the trial court erred in treating money from Grayson as loans (and, hence, marital debts) and advances from Landsem as gifts. A transfer without consideration from a parent to a child is presumed to be a gift. *Street and Street*, 90 Or App 466, 470, 753 P2d 424, *rev den* 306 Or 195 (1988). *See Richardson and Richardson*, 307 Or 370, 373 n 1, 769 P2d 179 (1989) (a finding that the wife's parents would forgive, or had already forgiven, the amount the wife owed on a condominium makes it appropriate to include the condominium's value in the wife's share of the marital property).

In this case, the record does not support the trial court's ruling that the post-separation money advanced by the parties' mothers should be treated differently. There is no evidence of any bookkeeping by wife or Grayson regarding the purported loans. It is not even clear how much wife withdrew from her joint checking account with Grayson. The evidence is that neither wife nor Grayson behaved as if the money withdrawn from that account was a loan and that Grayson had no realistic hope of being repaid. With respect to Grayson's 1991 car loan, the evidence is clear that Grayson expected to be repaid. However, wife testified that all of the dealership's debts had been resolved long before trial. Her testimony, coupled with the circumstances surrounding the loan, compel the conclusion that that debt was paid off when the car was delivered to the customer. On remand, the trial court should omit the $20,596 offset and recalculate the equalizing judgment.

Finally, we address husband's argument that the trial court erred in the amount and duration of spousal support that it awarded to wife. He contends that the award leaves him "faced with payments which reflect his mother's wealth, not his earning capacity," that the disparity in earning capacities between him and wife is not substantial, and that the spousal support should be reduced to $400 per month for two years and then $250 for three years. Wife

responds that the amount and duration of spousal support awarded in this case is appropriate, because even after she has completed the necessary training, her earning potential will "still be far below husband's," and because she is "approaching retirement age but is looking for an entry-level job."

In setting the appropriate amount and duration of spousal support, we attempt to award "such amount of money for such period of time as it may be just and equitable" for the supporting party to pay. ORS 107.105(1)(d). Under that statute, we consider a variety of factors, including the length of the marriage, the ages and health of the parties and their dependent children, each party's earning capacity considering his or her education, skills and work experience, the extent to which that capacity has been enhanced by the efforts of the other or impaired by extended absence from the job market, and the need for education or training to enable a party to become self-supporting. ORS 107.105(1)(d)(A-G); *Ley and Ley*, 133 Or App 138, 141, 890 P2d 440 (1995). The amount of the award should be reasonable and should enable the supported party to enjoy "a standard of living not overly disproportionate to that enjoyed during the marriage to the extent that is practicable." ORS 107.105(1)(d)(F); *Christensen and Christensen*, 123 Or App 412, 416, 859 P2d 1192 (1993).

■      Here, throughout the marriage the parties worked together in the dealership that provided their livelihood. Based on his experience at the dealership, husband is able to find work that pays $1,873 to $3,200 per month, plus benefits. Wife has been unable to transfer the skills she used at the dealership, she has no retirement benefits and she requires at least a year of computer training to make her employable in the clerical field. When she does complete the necessary training, she will be looking for an entry-level job at the age of 57 or 58. Under these circumstances, the trial court did not err in awarding wife indefinite spousal support of $150 per month. Wife is also entitled to higher levels of support while she receives training and makes a transition into a new career.

Based on the record, we agree with the trial court that husband has the capacity to earn $2,200 per month. However, we disagree with its conclusion that husband is capable of paying spousal support in the amount of $750 per month for two years while wife receives the training she needs to start a new career. The trial court reasoned that husband should pay that amount because he had been doing so during the separation. Husband testified that he was able to do so only because he received substantial amounts of money from Landsem. We agree with husband that spousal support should be based on his earning capacity, not on his mother's wealth. We conclude that an award of $550 per month in spousal support for the first two years is more appropriate, followed by $350 per month for the following two years and then indefinite support of $150 per month.

Remanded for entry of modified judgment recalculating equalizing judgment and modifying spousal support to $550 per month for two years from date of original judgment, followed by $350 per month for the next two years, followed by indefinite support of $150 per month; otherwise affirmed. No costs to either party.