Argued and submitted January 7, remanded in part with instructions; otherwise affirmed August 9, 2000

In the Matter of the Marriage of

Robert H. OWENS,
*Respondent,*

*and*

Linda L. OWENS,
*Appellant.*

(98 DO 0050; CA A104722)

8 P3d 994

Laura Graser argued the cause and filed the brief for appellant.

Steven K. Chappell argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

Wife appeals from a judgment dissolving the parties' marriage. ORS 107.105. She assigns error to the amount and duration of the trial court's award of spousal support. We review *de novo*, ORS 19.415(3), and affirm as modified.

We state the facts as they existed at the time of trial. The parties had been married 22 years. Husband was 46 years old, wife was 48 years old, and both were in good health. The parties' two daughters, who were 19 years old and 16 years old, lived with wife. The older daughter was attending Central Oregon Community College full-time on a scholarship that paid her tuition. She intended to become a teacher. The younger daughter was being home-schooled, and her future educational plans were uncertain.

Husband and wife are high school graduates. Although they both had some community college coursework, neither graduated from college. The parties agreed that they lived a modest lifestyle during their marriage. Husband had been employed at Les Schwab Tire Center for over 19 years. His hourly rate of pay was $13.95. Husband also earned overtime at a rate of one-and-a-half times his regular hourly rate. Although he was not guaranteed overtime, husband testified that he probably had not worked a winter season without working overtime. Although also not guaranteed, husband had regularly received a yearly bonus of approximately $3,000 and a dividend of approximately $1,500. Thus, as reflected on the parties' 1995 to 1997 federal tax forms, husband's total wages were $33,357, $35,720 and $36,614 respectively. Additionally, he received paid holiday and vacation time as well as various benefits, including insurance and retirement benefits. Specifically, husband did not have to pay the monthly premiums for his health insurance that had a $200 family deductible. After the deductible was paid and before the major medical coverage applied, the insurance covered 90 percent of medical costs. Additionally, husband received $60,000 worth of life insurance for which he incurred no out-of-pocket costs.

Wife began working at a bank after she graduated from high school and was employed as a bank teller when the

parties were married. She maintained that full-time job for approximately the first three years of the marriage, until shortly before the parties' older daughter was born. Thereafter, wife stayed home to raise the parties' daughters and did not have employment outside the home. In the later years of their marriage, husband wanted wife to obtain employment to supplement their income. In approximately 1995, wife took a five-week class to learn basic computer and résumé writing skills. Wife applied for but did not obtain employment at that time. Although the parties discussed strategies to allow her to obtain work experience and improve her marketability, husband discouraged those efforts, or the parties agreed that they were not cost effective.

Before trial, wife had been looking for a full-time job. She had a temporary job for a few days and had applied for various jobs that generally paid between $6.50 and $7.00 per hour. According to wife, she took a "postal exam test," which indicated that she was "eligible," and was on a waiting list. She was beginning a 13-week community college course to improve her computer and office skills. Wife did not believe that the positions for which she was applying provided health insurance. Although wife testified that she could maintain her health insurance through Les Schwab for up to three years for $270 per month, she testified that she was unable to afford that amount.

Before trial, the parties sold their residence, and each received approximately $31,000 from the proceeds. The parties also agreed that each would receive a one-half interest in an individual retirement account that had a value of approximately $16,000 and a one-half interest in a retirement account through Les Schwab that had a value of approximately $214,000. There were no marital debts. By the time of trial, the only unresolved issues were whether spousal support should be awarded, whether husband should be required to maintain life insurance to secure a spousal support award, and whether wife was entitled to an award of attorney fees.[1] The trial court awarded wife $400 per month in spousal support for four years and ordered husband to

---

[1] The judgment awards no attorney fees.

maintain the life insurance policy through his employer with wife as the primary beneficiary so long as a child and/or spousal support obligation remains. In the trial court's letter opinion, the court explained:

"The Court finds that [wife] has been out of the labor market for [a] substantial period of time, approximately nineteen years, and has had difficulty obtaining employment and what employment that she appears to be qualified for now will be at minimum wage. She is entitled to obtain additional education and have additional support in order to stabilize her life to obtain additional education and stabilized employment."

The judgment of dissolution provides, in part:

"The evidence showed that the husband had gross earnings from his employment in 1995 of $33,357; in 1996 of $35,720; and in 1997 of $36,614.25. Effective September 1, 1998, the husband's salary was increased from $13.10 per hour for regular time, with time and one-half for overtime, to $13.95 per hour for regular time, with time and one-half for overtime. At trial, a Certified Public Accountant gave testimony as to the tax consequences of spousal support and child support on both the husband and the wife using various assumptions as to income. One of those assumptions was the gross annual salary for the husband of $3,125 per month (using the husband's 1997 gross income and increasing it by approximately 2½%) and gross income for the wife of $1,126 per month (which was $6.50 per hour, the minimum wage in Oregon commencing January 1, 1999[,] on a 40 hour week for 52 weeks per year).

"The Court in this [judgment] has awarded [wife] spousal support of $400 per month for four (4) years. This four years of spousal support is based on the assumption that in that time [wife] can get further education and stable employment so that she can maintain a living style not disproportionate with what the parties enjoyed during the marriage relationship with the further assumption that the children of the parties will no longer be in [wife's] home or will be self-supporting."

■ On appeal, wife argues that she is entitled to indefinite spousal support in the amount of $600 per month rather than the $400 per month for four years that the trial court

awarded. ORS 107.105(1)(d) (1997) governs that issue and provides:[2]

"(1)   Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows:

"* * * * *

"(d)   For the support of a party, such amount of money for such period of time as it may be just and equitable for the other party to contribute, such contribution to be in gross, in installments or both, as the court may order. The court may approve, ratify and decree voluntary agreements providing for contribution to the support of a party. In making such support order, the court shall consider the following:

"(A)   The length of the marriage;

"(B)   The age and the physical and mental health of the parties;

"(C)   The contribution by one spouse to the education, training and earning power of the other spouse;

"(D)   The earning capacity of each party, including educational background, training, employment skills and work experience;

"(E)   The need for education, training or retraining to enable a party to become employable at suitable work or to enable the party to pursue career objectives to become self-supporting at a standard of living not overly disproportionate to that enjoyed during the marriage to the extent that is possible;

"(F)   The extent to which the present and future earning capacity of a party is impaired due to the party's extended absence from the job market to perform the role of homemaker, the extent to which suitable job opportunities are unavailable to a party considering the age of the party and the length of time reasonably anticipated for a party to obtain training or updating of career or job skills. In a case

---

[2] Although ORS 107.105(1)(d) was amended in 1999, those amendments apply only to petitions filed on or after October 23, 1999. Or Laws 1999, ch 587, §§ 1 and 3. Because the petition to dissolve the parties' marriage in this case was filed in May 1998 and the response and cross-petition was filed in June 1998, we apply ORS 107.105(1)(d)(1997).

of a party's extended absence from the job market to perform the role of homemaker, where it is likely that the party will never substantially recover from the loss of economic position due to the extended absence, and where the other party has, during the marriage, achieved a substantially advantageous economic position through the joint efforts of the parties, the court may award the disadvantaged party support as compensation therefor, so that the standard of living for the disadvantaged party will not be overly disproportionate to that enjoyed during the marriage, to the extent that that is practicable;

"(G) The number, ages, health and conditions of dependents of the parties or either of them and provisions of the decree relating to custody of the children, including the length of time child support obligations will be in effect;

"(H) The tax liabilities or benefits to each party and the net spendable income available to each party after accounting for such liabilities and benefits, and the decree shall state the court's findings relating to net spendable income of each party if such statement is requested by either party;

"(I) The amount of long-term financial obligation, including legal fees and costs;

"(J) Costs of health care to a party;

"(K) The standard of living established during the marriage;

"(L) Premiums paid or to be paid for life insurance under ORS 107.810 to 107.830 on the life of a party ordered to pay support; and

"(M) Such other matters as the court shall deem relevant in the particular case in order that each party shall have the opportunity to achieve an economic standard of living not overly disproportionate to that enjoyed during the marriage, to the extent that is possible."

In *Waterman and Waterman*, 158 Or App 267, 270-71, 974 P2d 256 (1999), we stated that "[t]he purpose of an award under the statute is to provide a reasonable amount of income to the recipient spouse that will enable that party to enjoy a standard of living, to the extent practicable, that will not be overly disproportionate to what was

enjoyed during the marriage." Furthermore, "[a]lthough we are mindful of the goal of ending the support-dependency relationship within a reasonable time, we cannot do so if the result works undue hardship." *Taylor and Taylor*, 136 Or App 416, 420, 902 P2d 120 (1995) (citation omitted). We begin by determining each party's monthly income for the purpose of determining the appropriate amount and duration of spousal support. In *Waterman*, we stated that "courts should be circumspect about imposing a support award based on income not presently available." 158 Or App at 271.

Although husband is not guaranteed overtime or annual bonus and dividend payments, the record indicates that, in addition to his base wages, he has regularly received all three kinds of payments in the past. Furthermore, his hourly wage increased from $13.10 to $13.95 in September 1998. Thus, we agree with the trial court's finding that husband's gross monthly income is $3,125. We also agree with the trial court's finding that wife is capable of earning monthly gross income of $1,126. Although she had not obtained a full-time, minimum wage job at the time of trial, her past work history, her community college courses and her eligibility for a postal service job all demonstrate her employability.

Wife's uniform support affidavit states that the total monthly expenses for the children are $783.56. In addition to the expenses for the children, the total monthly expenses for wife's household are $1,832.34, which include $1,581.84 in total fixed costs, $220.50 in discretionary expenses and $30 in additional expenses. Our review of the record does not reveal a uniform support affidavit for husband on file, and he did not testify about his expenses. Lynn Angland, a certified public accountant, testified on wife's behalf and prepared an exhibit that illustrates the income that husband would have available after taxes, depending on the amount of spousal support awarded. Angland assumed that: (1) husband earned annual wages in the amount of $37,500; (2) husband would have no dependents;[3] and (3) husband would file as a single

---

[3] The dissolution judgment states, in part:

"Pursuant to the stipulation of the parties, [husband] shall be entitled to claim both children as a dependency exemption on his income taxes for 1998. For each year thereafter, [wife] shall be able to claim them as dependents."

individual. Based on the exhibit, if husband were to pay $400 per month in spousal support, he would have $23,692 in annual income available after paying taxes and spousal support. That amounts to approximately $1,974 in monthly income. If husband were to pay $600 per month in spousal support, he would have $21,920 in annual income available after paying taxes and spousal support. That amounts to approximately $1,827 in monthly income. Husband's child support obligation will reduce those amounts further.[4]

Angland also prepared exhibits concerning the income available to wife after taxes and spousal support. Angland assumed that: (1) wife would earn $6.50 per hour and would work 20 or 40 hours per week and 52 weeks per year; (2) wife would file her taxes as the head of the household; and (3) either one or both daughters would be dependents. However, none of the exhibits reflects wife's disposable income when neither child is a dependent. Assuming that wife earns $1,126 each month and receives $400 per month in spousal support, she would have $18,320 in annual income before taxes. That amounts to approximately $1,527 per month before taxes. If she receives $600 per month in spousal support, she would have $20,720 in annual income before taxes, which amounts to approximately $1,727 per month before taxes.

■        In light of the above evidence, we agree with the trial court regarding the award of $400 in spousal support under the present circumstances of husband paying child support. However, we conclude that the trial court erred by failing to award indefinite spousal support to wife. At the time of trial, wife was 48 years old and at the end of a 22-year marriage with only a high school diploma and little work experience. Although she had worked before and during the first few years of the marriage, she has not been in the work force for approximately 19 years, primarily because she stayed at home to raise the parties' children. On this record, it appears that she is faced with the prospect of working at a minimum

---

[4] The trial court ordered husband to pay wife $567.93 each month for the support of their two children. The child support award continues "until the child attains the age of 18 years and continuing thereafter as long as the child is a 'child attending school' as defined in ORS 107.108(4), or until said child becomes emancipated or marries."

wage job for the rest of her working life, probably without health insurance or other benefits. We are persuaded by the evidence that wife's earning capacity has been impaired by her absence from the job market and that there will be a permanent disparity between husband's and wife's earning capacities. The trial court reasoned that, in four years with additional training and education, she could maintain a lifestyle not disproportionate to that enjoyed during the marriage. We find little evidence to support that conclusion. In four years, even if wife were to obtain additional training and education, she will be more than 50 years of age as she enters and competes in a workforce that is comparably younger. *Cf. Landsem and Landsem*, 144 Or App 555, 563, 927 P2d 625 (1996) (reasoning, in part, that the wife was entitled to indefinite spousal support in the amount of $150 per month because she required at least one year of computer training to be employable in a clerical position and, even if she completed the training, "she w[ould] be looking for an entry-level job at the age of 57 or 58"). Thus, in light of the length of the parties' marriage, the impairment of wife's earning capacity resulting from her absence from the job market, the income disparity between the parties, wife's limited education and her age, we conclude that indefinite support is appropriate.[5] Accordingly, we modify the judgment to award spousal support in the amount of $400 per month for the first 24 months from the date of the dissolution and $600 per month thereafter, as indefinite spousal support.

Remanded with instructions to modify judgment to award spousal support in the amount of $400 per month for the first 24 months from the date of dissolution and $600 per month thereafter, as indefinite spousal support; otherwise affirmed.

---

[5] Husband urges that wife's employment skills and experience in the banking industry with additional education will result in her being employed at other than a minimum wage job in the foreseeable future. In our view, that argument, under the circumstances of this case, would be made more appropriately in support of a motion to modify support based on an unanticipated change in circumstances, if that occurred.