Argued and submitted September 23, 2008, motion to dismiss denied; judgment
vacated; remanded for entry of judgment redistributing estate assets
April 29, 2009

In the Matter of the Estate of
Darrel L. Hunt, Deceased.

Russell K. JONES,
*Appellant,*

*v.*

Larry HUNT,
personal representative of the Estate of
Darrel L. Hunt,
*Respondent.*

Yamhill County Circuit Court
PR01023; A130170

206 P3d 1202

Russell K. Jones, Spokane, argued the cause and filed the briefs for appellant.

John N. McKeegan argued the cause for respondent. With him on the brief was Haugeberg, Rueter, Gowell, Fredricks, Higgins & McKeegan, P.C.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

This is a probate case in which the personal representative ordered only partial payment to a creditor, a lawyer who asserted a claim against the estate based on unpaid bills for legal services that had been provided to the decedent. The personal representative ordered only partial payment because of the existence of a competing claim of the decedent's father, which was based on a supposed agreement between the decedent and his father. The trial court upheld the personal representative's decisions and closed the estate. The creditor now appeals, arguing that the full amount of his claim should have been allowed because there is no evidence of any agreement between the decedent and his father as to the father's claims against the estate. On *de novo* review, *Hayes v. Bosch*, 31 Or App 897, 901, 571 P2d 1264 (1977), we find that there is, indeed, insufficient evidence of the existence of any agreement between the decedent and his father about the disposition of the estate. We therefore vacate the judgment of final distribution and remand for entry of a judgment redistributing the assets of the estate.

Appellant Russell Jones is a lawyer who practices in Montana and Washington. In 1994 and 1995, he represented Darrel Hunt; the nature of the matters is not relevant to the issues in this case. Darrel did not pay Jones for the legal work.

Around the same time, in 1994, Darrel became ill, and he and his wife moved into the residence of his father, Howard. Howard later testified that he and Darrel had an understanding that Howard would provide Darrel room, board, transportation, and medical care in exchange for payment of money sometime later, if necessary, out of Darrel's estate upon his death.

In 1996, Howard filed a bankruptcy petition. He did not list his purported 1994 agreement with Darrel—that is, any amount of money that Darrel owed him under the understanding with his father—as part of the bankruptcy estate. Howard received a discharge from the bankruptcy court that same year.

Meanwhile, Darrel still did not pay Jones for the legal work that Jones provided in 1994 and 1995. In 1998, Jones initiated an action in Yamhill County against Darrel for the unpaid attorney fees. In 1999, Jones obtained a judgment against Darrel in the principal amount of $19,489, plus interest.

Darrel died in 2000. At the time of his death, the funds available from his estate for distribution were $64,575.59 (primarily from an annuity). Jones did not receive notice of the probate. Howard, however, asserted a claim against the estate in the amount of $163,376, which he contended constituted the total that Darrel owed for six years of room, board, transportation, and medical care. He agreed to accept the funds available from the estate in full settlement of his claim and released and discharged the estate from further liability. The estate closed in June 2002.

In 2004, Jones learned about Darrel's death and about the final distribution of the estate. He filed a motion for relief from the judgment of final distribution and simultaneously filed a claim against Darrel's estate for satisfaction of his 1999 judgment, which by that time had grown to $37,440.20. He also filed an objection to Howard's claim, arguing that Howard's support of Darrel is presumed to have been a gift. *See Ingersoll v. Ingersoll*, 263 Or 376, 379, 502 P2d 598 (1972); *Landsem and Landsem*, 144 Or App 555, 562, 927 P2d 625 (1996).

By supplemental judgment entered in October 2004, the probate court determined that Jones was a person entitled to notice of probate and granted Jones's motion for relief from the judgment and reopened the probate estate to consider his claim, as well as his objection to Howard's claim. The personal representative then allowed Jones's claim, but rejected Jones's objection to Howard's claim. Because the estate assets of $64,575.59 were sufficient to pay only approximately one-third of each claim, the personal representative made a prorated distribution of the estate assets to Jones and Howard, with Jones receiving $13,135.16, and Howard receiving the balance.

Jones filed objections to the distribution in probate court, again challenging Howard's claim. Jones contended

that Howard should be judicially estopped from making a claim against Darrel's estate because, in the 1996 bankruptcy, Howard failed to disclose as an asset Darrel's supposed contractual obligation to him. Jones further asserted that Howard had failed to provide adequate evidence to substantiate his claim or to overcome the presumption that his payments made on behalf of the decedent and his family were gifts.

Howard testified that his expectation was that Darrel would pay him back for the room, board, transportation, and medical expenses that he provided from 1994 to 2000. He offered no documentation of either an agreement or the amount of expenses, however. He did submit a handwritten single sheet of paper on which he had summarized his calculations leading to the total of $163,376 that he asserted Darrel's estate owed him. That sheet included "housing and support" of $57,600, calculated at $800 per month for 72 months. It also included "health care" of $50,856 (cash) and $24,500 (borrowed), with no further explanation for the figures. And it included "mileage" of $30,420, calculated by assuming an "average of 100 miles per trip @ 3 trips per week" for six years multiplied by 32.5 cents per mile. Howard also contended that, as evidence of his understanding about the repayment of those expenses, Darrel at least on occasion signed over to Howard disability checks that he began receiving after the onset of his illness.

The probate court asked for a better explanation of the expenses. In response, Howard submitted an affidavit, in which he explained that he had unfortunately discarded nearly all of his records relating to the claim. He explained that he did find computer printouts of monthly statements from his bank for the period from 1998 to 2000, and those statements show deposits that he believes were deposits from Darrel's disability checks. He conceded that those bank statements, however, do not identify the source for any deposits. He also submitted a calendar for a three-month period from January through March 1999, on which he said that he had noted some of Darrel's expenses and cash loans to Darrel, which, if extrapolated for the entire six-year period, would far exceed the $163,376 that he was claiming.

The court found that Howard's claim was based on a debt, not a gift, and that Howard had established the amount of his claim. The court denied Jones's objection to the distribution. On the same date as the probate court's order denying Jones's objection, Jones filed a request for summary determination of the personal representative's method of calculating his claim. Shortly thereafter, the issue was worked out with the personal representative, and Jones withdrew his request for summary determination.

Jones then filed a second objection to Howard's claim, this time challenging Howard's standing to assert his claim against the estate. Jones reasoned that, to the extent Howard predicated that claim on an agreement with Darrel in 1994, that claim belonged to the trustee in bankruptcy, not to Howard. The probate court held a second hearing. Howard conceded that his claim against the estate could not include any expenses incurred before the bankruptcy. He nevertheless asserted that he remained entitled to assert a claim for expenses incurred after the bankruptcy based on the existence of a new agreement that came into existence after the bankruptcy.

The probate court once again denied Jones's objection to Howard's claim. It explained that it would not authorize a distribution for any claim arising before the bankruptcy discharge. But the court found that, after the bankruptcy discharge, Howard and Darrel had entered into a new agreement, which may form the basis for a claim against the estate. The court allowed both Howard's and Jones's claims in full, with distribution apportioned pursuant to ORS 115.125(2).[1]

■     The personal representative filed a petition for an order discharging the personal representative and closing the estate, and gave notice of the petition to Jones. Jones raised no further objections and the court issued an order discharging the personal representative and closing the estate. Jones filed his notice of appeal of that order, and then filed a

---

[1] ORS 115.125(2) provides that, "[i]f the applicable assets of the estate are insufficient to pay in full all expenses or claims * * *, each expense or claim of that class shall be paid only in proportion to the amount thereof."

second notice of appeal after the probate court, with this court's leave, entered a final judgment of distribution.[2]

On appeal, Jones advances two assignments of error. First, he contends that the probate court erred in rejecting his contention that Howard's claim is barred by judicial estoppel as a result of his failure to disclose his supposed contractual claim against Darrel at the time of his bankruptcy. Second, he contends that, assuming that the claim is not barred, Howard provided inadequate proof of its existence or amount.[3] For the reasons that follow, we find on *de novo* review that Howard failed to establish either the existence of a new agreement with Darrel after the bankruptcy *or* the amount of any claimed debt. We therefore do not reach the issue of judicial estoppel.

As we have noted, the probate court determined that there was a new agreement after the discharge in bankruptcy that Darrel would repay Howard for any support, transportation, or financial assistance that Howard provided to Darrel and his family. Assuming for the sake of argument that there was such an agreement before the bankruptcy, we have searched the record in vain for *any* evidence of such a second agreement between Darrel and Howard after the bankruptcy. There is no memorialization of any such agreement. There is no testimony from any party as to the existence of a separate agreement after the bankruptcy. There is no testimony from any party even as to conversations about a separate agreement.

The personal representative contends that such an agreement arose in response to "Darrel's accelerating downward spiral in the years after Howard Hunt's bankruptcy

---

[2] The personal representative filed a motion to dismiss the appeal, contending that the trial court's order was a summary determination pursuant to ORS 115.165, from which there is no right to appeal. ORS 115.165(3). We denied the motion by order with leave to renew. The personal representative has renewed his motion to dismiss, and we adhere to our first ruling, based on our review of the record, which we conclude reveals that, with the exception of one resolved challenge to the method of calculating his claim, Jones's claim against the estate was not processed through summary determination. Furthermore, his claim was never disallowed; the only dispute was whether it could be paid in full, which in turn depended on the allowance of Howard's claim.

[3] Jones no longer asserts that Howard lacks standing to file a claim against the estate.

[which] represented a changed circumstance, materially altering the agreement that existed pre-bankruptcy, replacing it with a new agreement, under which Howard Hunt incurred substantially increased obligations." There follows a citation to the transcript, but the citation refers to testimony about the nature of Darrel's increasing expenses, not about the negotiation of any new agreement. The personal representative cites no authority for the proposition that the increases in Darrel's medical expenses, in and of themselves, had the effect of canceling the original contract and substituting a new one, and we are aware of none. In any event, the snippet of testimony on which the personal representative relies is too brief and too vague to support all that he claims from it. All that the cited portion of the transcript reveals is that Howard testified that, "[i]n the last three years of his life, say 2000, '99, '98," Darrel became "far more expensive."

The personal representative also claims support for his assertion that a new agreement came into existence after the bankruptcy from the testimony of Darrel's wife, who testified that she had "an understanding" that Darrel would repay his father. Again, such testimony hardly establishes the existence of a separate agreement, particularly not one reached sometime after the 1996 bankruptcy, that Howard would have a claim against Darrel's estate for expenses related to his care. Moreover, an individual's subjective understanding is not the basis for establishing the existence of an agreement under Oregon law. *Sollars v. City of Milwaukie*, 222 Or App 384, 388-89, 193 P3d 75 (2008) ("Oregon follows the objective theory of contracts; that is, the existence of a contract does not depend on the parties' uncommunicated subjective understanding but on their objective manifestations of intent to agree to the same express terms.").

Even assuming for the sake of argument that Howard established the existence of an agreement that permitted him to assert a claim against Darrel's estate, the documentation of the amount of Darrel's expenses claimed is simply too sketchy to support the claim. Howard bears the burden of establishing his claim against the estate by a preponderance of the evidence. *Branch v. Lambert*, 103 Or 423, 433, 205 P 995 (1922) ("[A]ctions against executors and

administrators are governed by the general rules that in civil actions the party having the affirmative of the issue shall produce the evidence to prove it, and, when the evidence is contradictory, the finding shall be in conformity with the preponderance of evidence."). On *de novo* review, we conclude that Howard did not meet his burden.

As we have noted, the sole evidence of the amount of Howard's claim consisted of two documents: (1) a handwritten worksheet prepared years later summarizing what Howard *assumed* to be reasonable approximations of his actual expenses; and (2) a calendar showing three months of expenses and loans to Darrel. That evidence is simply insufficient to satisfy Howard's obligation to prove, by a preponderance of the evidence, the amount of his actual expenses incurred under the agreement with Darrel. We therefore conclude that the trial court erred in allowing Howard's claim. For that reason, the judgment must be remanded to the probate court for redistribution of the estate.

Motion to dismiss denied; judgment vacated; remanded for entry of judgment redistributing estate assets.