Argued and submitted February 4, vacated and remanded in part; otherwise affirmed October 4, 2000

In the Matter of the Marriage of

Patrick Jay McCARTHY,
*Appellant - Cross-Respondent,*

*and*

Brook T. McCARTHY,
*Respondent - Cross-Appellant.*

Brook T. McCARTHY,
*Cross-Plaintiff,*

*v.*

Jack J. McCARTHY
and Patrick Jay McCARTHY,
*Cross-Defendants.*

(97DM1054; CA A103968)

12 P3d 519

George W. Kelly argued the cause and filed the briefs for appellant - cross-respondent.

Malcolm J. Corrigall argued the cause and filed the brief for respondent - cross-appellant. With him on the brief was Corrigall, McClintock & Tosh, LLP.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

Husband appeals from a judgment that dissolved a 24-year marriage, awarded him child support, and awarded spousal support to wife. He makes three assignments of error: first, that his actual income, instead of his potential income, should have been used in calculating spousal support; second, that his potential income, if relevant, was improperly calculated; and third, that wife's potential income should have been used in calculating child support for the child in his custody. Wife cross-appeals, assigning error to the amount of the spousal support award. We review *de novo*, ORS 19.415(3), and modify in part.

At the time of dissolution, husband was 45 years old and wife was 44 years old. The parties have two children. Husband has been a licensed electrician since 1982 and is a member of the International Brotherhood of Electrical Workers union. Wife has not worked since the sixth year of their marriage. She is an alcoholic who has been disabled in the past by physical injuries, including those caused by a car accident. In 1995, husband moved to Oregon from California, where he had been working full time, earning $45,000 to $50,000 annually. Wife remained in California, maintaining their residence and preparing it for sale. After moving to Oregon, husband went to work for the L.H. Morris Company ("the company") as an employee and then purchased the company with a partner in March 1997, using money given to wife by her mother. Husband worked approximately 20 hours a week while constructing a house for the parties, earning an average of $20,360 per year. The parties never resumed cohabitation, and husband filed for dissolution of their marriage in November 1997. Both parties testified at trial in 1998 that they had planned to live together in the house that husband was constructing, on the income from his part-time employment.

After trial, the court awarded custody of the parties' younger daughter to husband.[1] The court ordered wife to pay $203 monthly in child support. It found husband's earning

---

[1] The older daughter was already emancipated.

capacity to be $4,093.60 monthly and ordered him to pay spousal support of $1,500 per month for two years, $1,000 per month for the following two years and $500 per month indefinitely thereafter. Also, the court awarded the parties equal property amounts of approximately $215,000.

On appeal, husband argues that his potential income should not be considered in the calculation of spousal support, because wife agreed during the marriage to live on the income from his part-time employment. Wife responds that her needs and the job market for electricians justify an award based on full-time employment at the union wage. In her cross-appeal, she asserts that the establishment of indefinite spousal support at $500 per month was error, given her prospective inability to work and husband's earning capacity. She contends that a more appropriate award would have been $1,000 per month based on husband's potential income and her own relative inability to earn income. Husband responds that wife should be employable within the time covered by temporary support.

■      The issues in this case are governed by ORS 107.105(1)(d)(A) (1997).[2] That statute provided:

"(1)   Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows:

"* * * * *

"(d)   For the support of a party, such amount of money for such period of time as it may be just and equitable for the other party to contribute, such contribution to be in gross, in installments or both, as the court may order. The court may approve, ratify and decree voluntary agreements providing for contribution to the support of a party. In making such support order, the court shall consider the following:

"(A)   The length of the marriage;

"(B)   The age and the physical and mental health of the parties;

[2] The amendments made in 1999, Or Laws 1999, ch 587, §§ 1 and 3, apply only to petitions filed on or after October 23, 1999.

"(C)  The contribution by one spouse to the education, training and earning power of the other spouse;

"(D)  The earning capacity of each party, including educational background, training, employment skills and work experience;

"(E)  The need for education, training or retraining to enable a party to become employable at suitable work or to enable the party to pursue career objectives to become self-supporting at a standard of living not overly disproportionate to that enjoyed during the marriage to the extent that is possible;

"(F)  The extent to which the present and future earning capacity of a party is impaired due to the party's extended absence from the job market to perform the role of homemaker, the extent to which suitable job opportunities are unavailable to a party considering the age of the party and the length of time reasonably anticipated for a party to obtain training or updating of career or job skills. In a case of a party's extended absence from the job market to perform the role of homemaker, where it is likely that the party will never substantially recover from the loss of economic position due to the extended absence, and where the other party has, during the marriage, achieved a substantially advantageous economic position through the joint efforts of the parties, the court may award the disadvantaged party support as compensation therefor, so that the standard of living for the disadvantaged party will not be overly disproportionate to that enjoyed during the marriage, to the extent that that is practicable;

"(G)  The number, ages, health and conditions of dependents of the parties or either of them and provisions of the decree relating to custody of the children, including the length of time child support obligations will be in effect;

"(H)  The tax liabilities or benefits to each party and the net spendable income available to each party after accounting for such liabilities and benefits, and the decree shall state the court's findings relating to net spendable income of each party if such statement is requested by either party;

"(I)  The amount of long-term financial obligation, including legal fees and costs;

"(J)  Costs of health care to a party;

"(K)  The standard of living established during the marriage;

"(L)  Premiums paid or to be paid for life insurance under ORS 107.810 to 107.830 on the life of a party ordered to pay support; and

"(M)  Such other matters as the court shall deem relevant in the particular case in order that each party shall have the opportunity to achieve an economic standard of living not overly disproportionate to that enjoyed during the marriage, to the extent that is possible."

The statute's mandate to consider "earning capacity" authorizes a consideration of potential income as well as actual past income. *Waterman and Waterman,* 158 Or App 267, 271, 974 P2d 256 (1999).

Wife was not employed at the time of trial. In calculating spousal support, the trial court found that she was unemployable and therefore attributed no potential income to her. In its opinion, the trial court reasoned:

"Wife is 44 years old, and has not worked outside the home since the birth of the oldest child, over 18 years ago. Because of technological changes in the movie industry, Wife testified she would not be able to return to her prior employment as a sound technician. It was Wife's testimony that she believes she could easily finish the requirements for a bachelor's degree in psychology, but she has not actually verified that with any college. Further, it was the testimony of a vocational consultant that without experience and an advanced degree, a bachelor's degree in psychology is not of great value in the job market. Wife also has a serious alcohol problem and is not now capable of obtaining or maintaining employment.

"* * * * *

"Wife will need at least two years to complete her alcohol treatment and her education and to obtain employment. It would be a period of time thereafter before Wife could hope to earn sufficient income to maintain a standard of living not disproportionate to the one enjoyed during marriage, and given Wife's age, it is unlikely that she will ever achieve the earning power of husband. At the same time, Wife needs to be encouraged to become employed."

The court's findings are based on the testimony of a vocational consultant, who testified that wife's employability was "quite low." She believed that wife might be able to procure an entry-level position in human services if she completed her degree in psychology, but that wife would have to do "a lot of catching up" to finish the partially completed degree because her last course work had been more than ten years ago. The consultant was not asked about wife's general employability in other jobs like food services, janitorial services, or transportation, but wife argues on appeal that her drug and alcohol history and physical restrictions speak for themselves about her general employability.

We disagree with some of the trial court's conclusions as the result of our *de novo* review of the record. There is no evidence that wife is in full-time treatment for her alcoholism, or that other alcohol-related problems keep her from working. In fact, wife testified that she had been able to control her drinking for several months before trial and that her alcoholism alone would not prevent her from working.[3] However, we do agree with the trial court that on this record, it is unlikely wife will ever achieve, as the result of her work history, the earning capability of husband. We find that wife is currently employable at least at minimum wage.

The trial court found husband's earning capacity to be $4,039, because there were sufficient jobs in his field in the surrounding area to allow him to resume full-time employment at approximately $24 per hour, the prevailing union wage for electricians at that time. Husband alleges that support should be based on his actual income from his business, because using potential income is too speculative, or alternatively that only additional income from his own business should be attributed to him if he worked full-time.

We have recently stated that, while a court may consider earning potential in setting spousal support, "courts should be circumspect about imposing a support award based on income not presently available." *Waterman*, 158 Or App at

---

[3] Wife was asked, "Not having drank for the last four and a half months, does your alcoholism prevent your from working at this point?" and she responded, "So far, so good. It doesn't, but the emotional state that I'm in does, at this point. I am fragile."

271. In addition, once the obligor spouse has presented evidence of his or her actual income, the recipient spouse who is seeking an award based instead on potential income must demonstrate the other's *present ability to pay* spousal support based on potential income. *Id.*

Additionally, the analysis in this case is influenced by the fact that the parties contemplated living on husband's part-time income, once wife joined him in Oregon. Finally, there is a public policy factor that plays a role under the statute. The aim of the statute is to enable the parties to live separately at a standard of living not overly disproportionate to that enjoyed by them during the marriage, to the extent possible. When those factors are applied to the facts of this case, several observations become apparent. First, in deciding to move to Oregon, the parties mutually contemplated a change from more remunerative employment in California. Therefore, it is in keeping with the policy underlying the statute to attribute to them a standard of living that they would have enjoyed from the operation of the business in Oregon, had the marriage continued. The evidence shows that the company is a success and makes a 20 percent profit. It also suggests that husband's company pays him approximately the prevailing union wage for the work he performs.

Also, husband does not work full time, and the company, in which he has an equal share with one other shareholder, hires outside electricians to perform work that husband is licensed and trained to perform. Husband's position relies exclusively on the assertion that he should not be required to work more hours than the parties formerly agreed upon during the marriage. However, it is inferable from this record that, had the marriage continued, and had husband's part-time earnings been inadequate to achieve the parties' desired standard of living, husband would have diverted the additional work to himself rather than hiring outside electricians.

Husband's contention is essentially an estoppel argument—that wife should be precluded from insisting on his full-time employment because she agreed during the marriage to live on part-time wages. We find that position to be without merit. Wife's agreement was based on a mutual

understanding that they would remain married, that husband's semi-retirement would first allow him to build the house in which they would live together, and that it would then allow them additional time together as a couple. They are no longer married, and therefore the essence of their agreement has failed. Husband cannot retain the benefit of his side of the "deal," when wife will neither live in the now-finished residence nor enjoy the additional time with husband. The reality is that wife will have to resume full-time work and receive spousal support in order to enjoy a standard of living not overly disproportionate to that enjoyed during the marriage. Thus, it is equitable to assess support in an amount that may require husband also to resume full-time work.

Assuming that husband could have worked all the hours worked by outside electricians, the additional income available to him would have been $4,138[4] for 1997 and $5,021 for January 1 to May 18, 1998. The most current reflection of the work available is from the 1998 wage reports. They show that there were 211 work hours available over the first four and a half months of 1998, at approximately $24 per hour. Averaged over 1998, that would have resulted in 563 hours of additional work available, which in turn would have yielded additional yearly income of approximately $13,512. Distributed monthly, those wages would have increased husband's monthly income of $2,000 per month by $1,126.

■ We conclude that husband's earning capacity should be set at $3,126 per month on this record and that wife's potential income should be derived from full-time employment at minimum wage, or $1,127. In that light, wife's request for spousal support in the amount of $1,000 is reasonable. We also hold that an indefinite award of spousal support is appropriate under these circumstances. Contrary to husband's argument, nothing in this record demonstrates that wife will be employable in excess of minimum wage. She has little training and few employment skills, and her work

---

[1] This sum includes only the compensation for hours available at the rate for electrician's wages. It is lower than the $8,348.73 asserted by wife, because wife's sum includes compensation for hours paying $11 per hour that were presumably not worked by electricians.

experience is limited. Accordingly, we modify the trial court's award to provide for indefinite support in the amount of $1,000 from the date of the judgment.

One other argument merits discussion. Husband was awarded the parties' share in husband's company in the property distribution. Wife argues that the calculation of spousal support should include future business income in addition to his salary as an employee. She contends that while the business's present profit is low because of capital expenditures, the potential income stream from the business supports a larger award. Without more persuasive evidence, we decline to speculate as to the amount of any potential income stream from husband's business.

We turn to the issue of child support.

Husband contends that child support was calculated improperly by the trial court, because his potential income was set too high and because no income was attributed to wife. In child support determinations, as in spousal support, a court is authorized to consider potential as well as actual income of either parent, and it *must* consider potential income when a parent is employed less than full time. OAR 137-50-360(1) provides:

> "If a parent is unemployed, employed on less than a full-time basis or there is no direct evidence of any income, child support shall be calculated based on a determination of potential income. For purposes of this determination, there shall be a rebuttable presumption that a parent can be gainfully employed on a full-time basis."

In this case, both husband and wife are subject to the rebuttable presumption of full-time employability. Neither party has successfully rebutted that presumption for the reasons previously discussed. Consequently, the amount of child support will have to be recalculated by the trial court on remand.

Award of spousal support vacated and remanded for entry of modified judgment for spousal support in the amount of $1,000 per month in indefinite support from the date of original judgment; award of child support vacated and remanded for reconsideration; otherwise affirmed.