Argued and submitted April 6, modified in part; remanded in part; otherwise
affirmed October 17, 2001

In the Matter of the Marriage of

Warren Frederick DOPSON,
*Respondent,*

*and*

Kimberly Jean DOPSON,
*Appellant.*

15-99-02529; A108580

33 P3d 1019

George W. Kelly argued the cause and filed the briefs for appellant.

Jeffrey E. Potter argued the cause for respondent. With him on the brief was Gardner, Honsowetz, Potter, Budge & Ford.

Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

Wife appeals from a judgment of dissolution that awarded her spousal support and parenting time with the parties' two children. She argues on appeal that the spousal support award is inadequate and that more parenting time is warranted. On *de novo* review, we agree with the trial court's decision regarding the parenting time issue, and further discussion of that issue would not benefit the bench or the bar. We modify the spousal support award and otherwise affirm.

The parties were married in 1987 and have two children. At the time of the trial, both parties were 40 years old. Husband is a physician who completed the last two years of his residency during the marriage and now practices medicine in Eugene, making an average of $13,667 per month. Wife has a master's degree in counseling, which she completed before the parties married. She has worked in counseling jobs and in private practice for nine years. During that time, she has made between $25 and $125 per hour, depending on the nature of her counseling position. Wife is not yet fully licensed by the State of Oregon to provide counseling without supervision and must pay a supervising counselor $100 per week. However, she has completed all of the courses necessary to become licensed. Once she is licensed, she will no longer incur the supervision fee.

In late 1996, wife experienced blurred vision, vertigo, a bulging in her eye, and ear pain. Eventually, she was diagnosed with a compression of cranial nerves. She used substantial pain medication from October 1996 until she underwent brain surgery in December 1998. Nonetheless, she maintained a case load in private counseling practice throughout that period of time, and in 1997, had gross income of $38,378 from that practice. She also had office expenses of $41,525 during 1997. In private practice, wife often had more clients than she could fit into her counseling schedule, working two days per week.

After the surgery in December 1998, wife resumed work within four to six weeks. She was able to stop taking narcotic pain medication by March 1999, and her recovery has been positive. She continued to work part-time until the

dissolution trial, when she stopped working, at her supervisor's suggestion, until some of her personal, medical and emotional issues could be resolved.

At trial, the parties produced 27 witnesses who testified about the parties' marital standard of living, financial situations, and parenting and household responsibilities. The trial court found that wife has the potential to earn $4,167 per month in her field of counseling within six months of the dissolution and to earn $8,333 monthly within 12 months. It also found that husband's monthly income of $13,667 was likely to continue. Consequently, it awarded spousal support to wife in the amount of $1,500 per month for six months, followed by 12 months of spousal support of $750 per month. Wife argues on appeal that the trial court's finding as to her earning potential is too high. She seeks an increase in spousal support of $5,000 per month for two years, $3,000 per month for two additional years and $2,000 per month for an additional six years.

Because the dissolution petition in this case was filed before the effective date of Oregon Laws 1999, chapter 762, section 1, the controlling statute is ORS 107.105(1)(d) (1997). That statute provided:

"(1) Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows:

"* * * * *

"(d) For the support of a party, such amount of money for such period of time as it may be just and equitable for the other party to contribute, such contribution to be in gross, in installments or both, as the court may order. The court may approve, ratify and decree voluntary agreements providing for contribution to the support of a party. In making such support order, the court shall consider the following:

"(A) The length of the marriage;

"(B) The age and the physical and mental health of the parties;

"(C) The contribution by one spouse to the education, training and earning power of the other spouse;

"(D) The earning capacity of each party, including educational background, training, employment skills and work experience;

"(E) The need for education, training or retraining to enable a party to become employable at suitable work or to enable the party to pursue career objectives to become self-supporting at a standard of living not overly disproportionate to that enjoyed during the marriage to the extent that is possible;

"(F) The extent to which the present and future earning capacity of a party is impaired due to the party's extended absence from the job market to perform the role of homemaker, the extent to which suitable job opportunities are unavailable to a party considering the age of the party and the length of time reasonably anticipated for a party to obtain training or updating of career or job skills. In a case of a party's extended absence from the job market to perform the role of homemaker, where it is likely that the party will never substantially recover from the loss of economic position due to the extended absence, and where the other party has, during the marriage, achieved a substantially advantageous economic position through the joint efforts of the parties, the court may award the disadvantaged party support as compensation therefor, so that the standard of living for the disadvantaged party will not be overly disproportionate to that enjoyed during the marriage, to the extent that that is practicable;

"(G) The number, ages, health and conditions of dependents of the parties or either of them and provisions of the decree relating to custody of the children, including the length of time child support obligations will be in effect;

"(H) The tax liabilities or benefits to each party and the net spendable income available to each party after accounting for such liabilities and benefits, and the decree shall state the court's findings relating to net spendable income of each party if such statement is requested by either party;

"(I) The amount of long-term financial obligation, including legal fees and costs;

"(J) Costs of health care to a party;

"(K) The standard of living established during the marriage;

"(L) Premiums paid or to be paid for life insurance under ORS 107.810 to 107.830 on the life of a party ordered to pay support; and

"(M) Such other matters as the court shall deem relevant in the particular case in order that each party shall have the opportunity to achieve an economic standard of living not overly disproportionate to that enjoyed during the marriage, to the extent that is possible."

In evaluating the proper amount of spousal support to award, we consider each of the applicable factors in ORS 107.105(1)(d) (1997) to find the amount that is "just and equitable for the other party to contribute." We are required to consider potential earning capacity instead of actual earnings, *McCarthy and McCarthy*, 170 Or App 183, 187-90, 12 P3d 519 (2000), and to fashion an award that will allow "each party * * * to achieve an economic standard of living not overly disproportionate to that enjoyed during the marriage." ORS 107.105(1)(d)(M) (1997). As an initial matter, we note that the record shows that the parties' standard of living during the marriage was supported in part by the incurring of substantial amounts of debt. Accordingly, we have taken into account the evidence of that debt in determining the parties' true standard of living while they were married.[1]

As did the trial court, we find that the evidence of husband's income shows a steady income stream of approximately $13,667 per month, which is subject to mandatory payments into a retirement account, repayment of amounts overdrawn from his office accounts during past years and other debts assigned to husband in the dissolution judgment. We also find that husband's claimed needs and the needs of the children who are in his primary custody, are reasonable.

The more difficult question is how to evaluate wife's earning capacity and her reasonable needs in light of her licensing status, her recent medical problems and the paucity of actual records of her earnings and business expenses from recent years. The evidence shows that wife earned $20,000

---

[1] Specifically, the record shows that the parties' home was encumbered for more than its resale value and that there was marital debt of approximately $119,000, which was to be paid from husband's retirement account under the terms of the dissolution judgment.

per year in her first job as the program director of an inpatient psychiatric facility in Arizona. After moving to Oregon, wife taught in a hospital nutrition program. From 1990 through 1994, she worked part-time in private practice as a counselor. In 1994, wife was an independent contractor with a counseling facility, working a minimum of 16 hours per week at $25 per hour for an estimated monthly income of at least $1,600. Wife also had part-time work for a kidney dialysis program for $100 per hour.

Wife's tax returns show a gross business income of $38,378 for 1997, with expenses of $41,525. During that time, she worked two and a half days per week even though she was suffering from pain and had other limitations due to her medical condition. She resumed part-time work four weeks after the surgery. The parties' accountant testified that mental health counselors in Lane County, where wife has her practice, earn between $75 and $150 hourly. The accountant also testified that, by working only part time, wife incurred most of the overhead expenses that a full-time practice would incur but earned only part of the income that a full-time practice would produce. The witness concluded that wife could eventually earn in excess of $100,000 per year, even if she billed out only 27 hours per week.

There is evidence of some limitations on wife's earning capacity, such as her lack of licensing and the loss of referrals from husband's practice, which had formerly made up part of her client base. There are also indications that her physical and emotional limitations at the time of dissolution may have affected her ability to attract and retain clients during the dissolution and may also have affected her professional reputation. However, wife presented no persuasive evidence to show that these limitations will continue in the future. Instead, her most recent tax returns show that, even in the throes of a medical disability, she was able to work part-time, and husband's evidence shows that wife has overcome most of the residual effects of her medical problem. Under the circumstances, we agree with the trial court's finding that wife had the capability of earning $4,162 a month at the time of trial. Given that potential income, we also agree with the trial court's initial award of $1,500 per month in spousal support.

 The trial court also found that wife is capable of earning more than $8,000 per month within 12 months of the judgment. Accordingly, it reduced her support award to $750 per month after six months and ended the support after a total of 18 months. We recognize that a "step-down" in spousal support is warranted when the evidence demonstrates that the recipient of spousal support will enjoy a gradual increase in earnings over a period of time. *Grove and Grove*, 280 Or 341, 353-54, 571 P2d 477 (1977). Although we agree with the trial court's projection of wife's eventual earning ability, we think it unlikely that the increase will be achieved within the duration of the spousal support established by the court. Wife will not be able to practice free of supervision until she has passed her licensing examination and has practiced for three years after becoming licensed. Moreover, her accountant testified:

> "She's been gradually growing the practice, and her expenses have stayed relatively stable over the years, and her income is growing. She just hasn't really grown past the point of getting above her fixed expenses. And it has to do with how many patients she sees, how many hours she works."

We recognize that, as wife undertakes the building of a full-time practice, it will take time for her to achieve her full earning potential. Accordingly, we modify the award of spousal support to monthly support in the amount of $1,500 per month for the first 12 months. Thereafter, the amount is decreased to $1,000 per month for the next 36 months.

Spousal support award modified to provide for support in the amount of $1,500 per month for the first 12 months after the date of the dissolution judgment and $1,000 per month for the following 36 months thereafter; remanded for recalculation of child support obligation based on modified spousal support obligations; otherwise affirmed.