Argued and submitted November 3, 2005, affirmed on appeal and cross-appeal
August 2, 2006

In the Matter of the Marriage of

Laurie K. WORTHINGTON,
*Respondent - Cross-Appellant,*

*and*

Mark L. WORTHINGTON,
*Appellant - Cross-Respondent.*

15-00-01762; A125956

140 P3d 1148

Marc D. Perrin argued the cause and filed the briefs for appellant - cross-respondent.

Steve C. Baldwin argued the cause and filed the brief for respondent - cross-appellant. With him on the brief was Watkinson Laird Rubenstein Baldwin & Burgess, P.C.

Before Edmonds, Presiding Judge, and Linder and Wollheim, Judges.

WOLLHEIM, J.

**WOLLHEIM, J.**

Husband appeals from a judgment reducing his spousal support obligation from $7,500 per month to $6,000 per month, and wife cross-appeals. Husband argues that the trial court erred in not terminating or further reducing his spousal support obligation. Wife argues that the court erred in making any reduction in the support payments. On *de novo* review, ORS 19.415(3), we affirm on both the appeal and the cross-appeal.

The parties married in August 1977. Husband is a dentist and owns a dental practice. During the marriage, wife worked part time. The parties had three children together. In November 2000, husband and wife entered into a stipulated judgment of dissolution that divided the parties' property and awarded wife child and spousal support. The judgment listed husband's income as $360,000 per year. His annual income was actually $445,000, with $325,000 coming from his dental practice and $120,000 coming from Flexible Dimensions, a business venture that he was engaged in at the time. However, the parties stipulated that his income from the dental practice would be reduced as he devoted more time to the business venture. Thus, $360,000 represented the amount that the parties anticipated that husband would earn annually. The judgment stated wife's potential annual income from working as $18,000. The judgment also awarded wife commercial property owned by the parties, which, at the time of dissolution, produced an annual rental income of $10,264.

As part of the stipulated judgment, husband agreed to pay wife maintenance spousal support in the amount of $7,500 per month. The judgment specifically identified four factors justifying the award: (1) the duration of the marriage; (2) the standard of living established during the marriage; (3) the large disparity in income and earning capacity of the parties; and (4) the financial needs and resources of each party.

In September 2002, wife remarried. She and her new husband, Sweet, live in Nevada. Sweet owns a business, Galena Market, and has an annual income of $90,000. Sweet

also has an interest in the Sweet Family Trust, which is composed mostly of real estate, savings accounts, and a private airplane. The trust's assets are valued at $4,078,512.

In December 2003, husband sought to terminate or reduce his support obligation, arguing that, since wife's remarriage, she "enjoy[s] a standard of living that is considerably better than the one * * * enjoyed while [husband and wife] were married." At the June 2004 hearing, husband testified that his income for that year from his dental practice would be $333,000. He also testified that Flexible Dimensions had failed as a business and that he had received his last monthly payment from the venture in February 2002. He anticipated no other income from any source. The parties also adduced evidence of wife's income. She was employed by Galena Market, where she earned approximately $18,000 annually. The commercial property awarded to wife in the dissolution judgment also produced rental income of $23,104 that year.

In addition to evidence of their respective incomes, the parties also submitted evidence of their expenses, particularly those related to the education of their children. At the time of the modification hearing, the parties' children were 16, 20, and 21. The youngest child was in high school and lived full time with wife and Sweet. The oldest and middle children were attending college; they lived with wife and Sweet during the summer. Although, by the terms of the dissolution judgment, husband is obligated to contribute $12,000 per year to each child's college expenses, wife and Sweet paid the remaining college expenses for the two older children. Sweet testified that tuition alone for each child was between $25,000 and $30,000 per year. The oldest child planned to attend dental school. Sweet testified that he and wife intended to try to "take care of the cost" of that schooling, which he estimated to be $60,000 per year. Husband is not obligated by the dissolution judgment to contribute to the cost of graduate school, but he testified that he was "trying to figure out ways to help her with loans and * * * might be able to loan her some money," depending on what he had available.

Sweet has two children from a previous marriage. At the time of the modification hearing, his children, who were then 19 and 21, were attending college, which Sweet was paying for. The older child planned to attend law school at Notre Dame; she had received a tuition scholarship to do so, but wife and Sweet intended to pay her housing and other expenses. Sweet made clear that he and wife are committed to enabling all of their children to complete their education without student loan debt.

After the modification hearing, the trial court found that husband's "income from his dental practice [was] approximately the same * * * as it was at the time of the dissolution." In addition, the court found that wife's remarriage had somewhat reduced her financial needs and increased her resources, but that neither party was "living a lifestyle overly disproportionate to that which was enjoyed during the marriage." With respect to the Sweet Family Trust, the court acknowledged that its assets were sizeable and that Sweet appeared to hold at least a 50 percent interest in it, but the court noted that "nobody has chosen to educate me about what wives' rights are in Nevada" and that neither party had "chosen to tell me what this Trust in Nevada really means in terms of [Sweet's] discretion to reach that income, what the real restrictions are of what he can do." Nevertheless, the court stated that "the bottom line is, behind [wife] is some percentage of this very significant asset that's got to lend stability to her life down the road * * *." The court concluded that terminating spousal support was not appropriate but that wife "could probably live well with something less." Accordingly, it reduced husband's spousal support obligation to $6,000 per month.

On appeal, husband argues that the trial court erred in reducing his spousal support obligation by only $1,500 per month. According to husband, as a result of wife's remarriage, the increase in her income, and the decline in husband's income, the parties' relative financial positions have now changed dramatically.

Wife argues that the new financial resources she has obtained since her remarriage do not satisfy the purpose of the original spousal support award. She therefore contends,

in her response to husband's appeal, that the trial court did not err in refusing to terminate or further reduce husband's support obligation. In her cross-appeal, she asserts that the court should not have reduced the support obligation at all.

■    An award of spousal support may be modified if there is a substantial, unanticipated change in economic circumstances since the time of the original award. *See* ORS 107.135(3)(a) (in a proceeding to reconsider spousal support, a "substantial change in economic circumstances of a party, which may include but is not limited to, a substantial change in the cost of reasonable and necessary expenses to either party, is sufficient for the court to reconsider its order of support"); *Tomos and Tomos*, 165 Or App 82, 87, 995 P2d 576 (2000) (change in circumstances must be unanticipated). The burden of showing that circumstances have changed is on the party requesting the change—in this case, husband. *Maier and Maier*, 137 Or App 15, 18, 902 P2d 1214 (1995), *rev den*, 322 Or 644 (1996). If there is a change in circumstances, to determine whether a modification is appropriate, courts consider the purposes of the original support award and whether those purposes will continue to be met if the award is reduced or terminated.

■ ■    We first consider whether there was an unanticipated, substantial change in economic circumstances. Remarriage is not, by itself, grounds for termination of spousal support. *See Bates and Bates*, 303 Or 40, 44, 733 P2d 1363 (1987) ("Some of the purposes behind spousal support * * * are not altered or ended by remarriage."). Nevertheless, when a remarriage substantially enhances a party's financial resources or decreases financial needs, it may furnish grounds to reexamine an existing support obligation. *See* ORS 107.135(3)(a). In this case, wife's marriage to Sweet enhanced her financial resources sufficiently to warrant reexamination of the original support award. As noted above, Sweet has an annual income of $90,000 and an interest in a trust with considerable assets. We conclude that this remarriage constituted an unanticipated, substantial change in economic circumstances.

■    We turn to whether modification of the support award was appropriate in light of the purpose of the original

award. That purpose is reflected in the stipulated judgment of dissolution. As noted, the parties stipulated that the factors that justified maintenance spousal support were the duration of the marriage, the standard of living established during the marriage, the disparity in the income and earning capacity of the parties, and the financial needs and resources of each party. Those factors, together with the stipulation that the award was for "spousal maintenance," indicate that the award was intended to allow wife to maintain a standard of living not overly disproportionate to what the parties enjoyed during the parties' marriage. *See* ORS 107.105(1)(d)(C) (factors to be considered in awarding maintenance spousal support include "(i) [t]he duration of the marriage; * * * (iv) [t]he standard of living established during the marriage; (v) [t]he relative income and earning capacity of the parties * * *; [and] (viii) [t]he financial needs and resources of each party"); *McCarthy and McCarthy*, 170 Or App 183, 190, 12 P3d 519 (2000) (the aim of maintenance spousal support is to "enable the parties to live separately at a standard of living not overly disproportionate to that enjoyed by them during the marriage, to the extent possible").

Husband takes the position that wife's standard of living is now overly disproportionate. We disagree. While they were married, the parties together had at least $30,000 per month in gross income at their disposal. Wife and Sweet have a combined income of $9,000 per month from work, plus approximately $2,000 per month that wife receives as rental income. Although the Sweet Family Trust contains considerable assets, husband did not demonstrate that those assets are readily available to wife and Sweet.

We conclude that wife's financial situation has improved to some degree since the dissolution of the parties' marriage, and we agree with the trial court that the purpose of the original award can be satisfied with less than the original amount awarded. We therefore reject wife's argument that the trial court erred in reducing the spousal support award. However, husband has not shown that wife's financial picture has improved to the point where she can maintain her standard of living without husband's continued support. Her financial resources simply have not reached a level

comparable with that of the parties during their marriage. *Cf. Rubey and Rubey*, 165 Or App 616, 622, 996 P2d 1006 (2000) (terminating spousal support after the wife remarried because her new husband's resources "provide her with the same or greater level of income than the original award of spousal support"). Furthermore, in light of wife's and Sweet's commitment to funding their children's college and post-graduate education, wife's financial needs have grown to a point that largely offsets the increase in her resources.

On the other hand, although husband's total income diminished after Flexible Dimensions failed, relative to the reduction that the trial court made to his support obligation, his income is not substantially less than the amount that the parties anticipated in the stipulated judgment. Husband has not shown that, as a result of the reduction in his income, his lifestyle has suffered substantially. We conclude that the spousal support award, as modified by the trial court, continues to serve the purpose for which the award was originally made. We therefore decline to disturb it.

Affirmed on appeal and cross-appeal.