Argued and submitted September 30, 1998, judgment modified in part; otherwise affirmed February 10, 1999

In the Matter of the Marriage of

Debora A. WATERMAN,
*Respondent,*

*and*

Timothy E. WATERMAN,
*Appellant.*

(15-97-00041; CA A99452)

974 P2d 256

George W. Kelly argued the cause and filed the brief for appellant.

Russell S. Barnett argued the cause for respondent. With him on the brief was Linda J. Wilson & Associates.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Husband appeals from a judgment of dissolution of marriage under ORS 107.105, challenging the trial court's awards of spousal support and child support and its division of the parties' property. We review *de novo*, ORS 19.415(3) and modify the judgment.

At the time of trial, husband was 39 years old, wife was 38 years old and their two children were ages 17 and 14. The parties had been married for 20 years. Both children are expected to continue to live with wife in the event that they attend college. Before the parties' separation, husband worked as an equipment operator for a lumber mill in Springfield. He earned a $16 hourly wage and worked an average of 15 hours overtime each week, resulting in a monthly income of $4,263. After two unexcused absences, husband was fired by his employer. Shortly thereafter, and before trial, he began similar work in Coos Bay, earning a $14 hourly wage. His overtime fluctuates between one to ten hours weekly. He currently earns $2,886 per month. During most of the marriage, wife did not work outside the home. She presently works 19 hours per week at $7.32 per hour during the school year. At trial, she expressed an interest in pursuing college-level bookkeeping training as long as it did not interfere with her children's needs.

The trial court awarded wife custody of the children and $234 per month per child for child support. It ordered that the family residence and several vehicles owned by the parties be sold and that the proceeds be used to pay off the parties' mortgages and consumer debts. Wife was awarded the remainder of the proceeds from the sales which, the parties agree, results in a property division to wife valued at $122,579 and to husband valued at $33,367. The trial court awarded wife $1,500 a month in spousal support until the sale of the residence, $1,000 a month for a total of four years, $750 a month for the next three years and $500 a month for an additional two years.[1] In calculating the spousal and child

---

[1] The judgment provides that:

"[Husband] shall pay to [wife], as and for her support and maintenance, beginning August 1, 1997, the sum of $1,500.00 per month until such time as

support award, the trial court found husband's gross monthly income to be $4,200 and wife's to be $953.[2]

■    Husband first assigns error to the trial court's award of spousal support. He argues that the trial court erred when it established spousal support based on his earnings while working in Springfield. Second, he argues that support should be limited to four years. ORS 107.105(d) governs the determination of spousal support in a dissolution proceeding, both as to amount and duration.[3] The purpose of an award

---

the real property * * * is sold. After the closing of the sale of the real property * * *, spousal support shall be reduced to $1,000.00 per month for a period of four years, including such time until the sale of the real property * * *. Thereafter, [husband] shall pay to [wife] the sum of $750.00 per month for a period of three years and then spousal support for an additional two years at the rate of $500.00 per month."

[2] For purposes of the child support calculations, wife's income was presumed to be at minimum wage or $953 per month. OAR 137-050-0360(2)(b). The parties do not contest the application of that rule.

[3] ORS 107.105(d) provides, in part:

"For the support of a party, such amount of money for such period of time as it may be just and equitable for the other party to contribute, such contribution to be in gross, in installments or both, as the court may order. The court may approve, ratify and decree voluntary agreements providing for contribution to the support of a party. In making such support order, the court shall consider the following:

"(A) The length of the marriage;

"(B) The age and the physical and mental health of the parties;

"* * * * *

"(D) The earning capacity of each party, including educational background, training, employment skills and work experience;

"(E) The need for education, training or retraining to enable a party to become employable at suitable work or to enable the party to pursue career objectives to become self-supporting at a standard of living not overly disproportionate to that enjoyed during the marriage to the extent that is possible;

"(F) The extent to which the present and future earning capacity of a party is impaired due to the party's extended absence from the job market to perform the role of homemaker, the extent to which suitable job opportunities are unavailable to a party considering the age of the party and the length of time reasonably anticipated for a party to obtain training or updating of career or job skills. * * *

"(G) The number, ages, health and conditions of dependents of the parties or either of them and provisions of the decree relating to custody of the children, including the length of time child support obligations will be in effect;

"* * * * *

"(J) Costs of health care to a party;

"(K) The standard of living established during the marriage;

under the statute is to provide a reasonable amount of income to the recipient spouse that will enable that party to enjoy a standard of living, to the extent practicable, that will not be overly disproportionate to what was enjoyed during the marriage. ORS 107.105(1)(d)(F); *Grove v. Grove*, 280 Or 341, 350, 571 P2d 477, *mod* 280 Or 769, 572 P2d 1320 (1977).

■ ■    Although the statute's use of the term "earning capacity" allows a trial court to take into consideration an obligor's past income and income potential, courts should be circumspect about imposing a support award based on income not presently available. In addition, when there is evidence in the record of the husband's actual income, it is incumbent upon the wife as the proponent of a higher income figure to demonstrate husband's present ability to pay spousal support based on the higher amount.[4] In this case, aside from assigning fault to husband's involuntary dismissal from his previous job, there is little evidence to rebut husband's testimony that at the time that he accepted his current job a higher wage was unavailable to him. Although there is evidence that there were work opportunities that had slightly higher wage rates, those opportunities, in our view, did not provide a reliable, steady source of income. In light of all of the evidence, we hold that husband's ability to pay spousal support should be based on his current income of $2,886 a month.

"(L)  Premiums paid or to be paid for life insurance under ORS 107.810 to 107.830 on the life of a party ordered to pay support; and

"(M)  Such other matters as the court shall deem relevant in the particular case in order that each party shall have the opportunity to achieve an economic standard of living not overly disproportionate to that enjoyed during the marriage, to the extent that is possible."

[4] *See, e.g., Pagano and Pagano,* 147 Or App 357, 362-64, 935 P2d 1246 (1997) (concluding that earning capacity and job opportunities could be considered when there was nothing that would prevent the obligor from practicing medicine in the future, although the obligor had temporarily stopped practicing ostensibly due to the stress of the dissolution); *Harper and Harper,* 122 Or App 9, 12-13, 856 P2d 334, *rev den* 318 Or 246 (1993), *cert den* 511 US 1108 (1994) (establishing earning capacity based on expert testimony of what the obligor could earn with his 19 years of legal practice rather than obligor's estimate of his current income); *Gable and Gable,* 89 Or App 664, 668-69, 750 P2d 534 (1988) (reasoning that earning capacity properly was used instead of the actual unemployment income when obligor quit his dental practice of 11 years just before trial and there was no evidence of any physical or professional impediment that would have prevented him from working as a dentist).

■ Husband next contends that the trial court erred in awarding spousal support for nine years and asserts that it should be limited to four years. Again, the factors in ORS 107.105(1)(d) guide our determination of what award would provide wife a standard of living not overly disproportionate to that which she enjoyed during marriage. Wife is relatively young and in good health. The youngest child will be 18 within four years from the time of trial. Wife has been out of the full-time workforce for most of the 20-year marriage, but she is not wholly without marketable skills. Given her experience and skills in bookkeeping, she may reasonably be expected to increase her earning capacity in the future after further training. We believe that six years of spousal support allows wife an adequate opportunity to make the transition from her primary role as homemaker to self-sufficiency in the workforce. Therefore, we conclude that wife should be awarded $1,000 for the months of August and September 1997, $700 per month through July 2001, and $500 per month through July 2003 as spousal support.

■ Husband next assigns error to the trial court's award of child support. The trial court calculated his child support obligation based on the wage that he earned while working in Springfield. He argues that under the child support guidelines the award must be based on his present income and not on what he was earning when he lived in Springfield. We agree. OAR 137-050-0320 through OAR 137-050-0490 govern the calculation of child support. Under those provisions, gross income includes income from any source, including husband's hourly wage and overtime pay. OAR 137-050-0340. Overtime earned on a regular basis is appropriately considered when that determination is based on facts that exist at the time of calculation. *See, e.g., Sigler and Sigler*, 133 Or App 68, 71, 889 P2d 1323 (1995); *Crump and Crump*, 138 Or App 362, 368, 908 P2d 839 (1995), *rev den* 323 Or 483 (1996). In this case, the evidence that husband worked more overtime *in the past* for a different employer is not germane to the calculation of his present gross income under the rules, in the absence of extenuating circumstances. *Cf. Christensen and Christensen*, 123 Or App 412, 415, 859 P2d 1192 (1993) (concluding that husband's significant drop in salary shortly

before trial was suspicious, given that he was the sole shareholder of the company and his employees suffered no corresponding drop in their salary).

Nonetheless, wife asserts that husband's *income potential* should be used in calculating child support because of his past employment in Springfield. However, income potential is properly considered only under certain, limited circumstances under the applicable rule. OAR 137-050-0360(1) provides, in part:

> "If a parent is unemployed, employed on less than a full-time basis or there is no direct evidence of any income, child support shall be calculated based on a determination of potential income."

Wife argues that the language in the rule "employed on less than a full-time basis" should be read to mean "employed at less than full earning capacity." However, in *LaFavor and LaFavor*, 151 Or App 257, 262, 949 P2d 313 (1997), we said, regarding the meaning of that phrase:

> "[T]he necessary predicate under OAR 137-050-0360 for basing child support on potential income is that the parent is unemployed or employed less than full time."

Here, husband is working more than 40 hours a week at an hourly wage. It can hardly be said that he is unemployed or employed less than full time. Under the applicable child support guidelines and after factoring in husband's present income and the modified spousal support award, wife is entitled to $182 per child for the months of August and September of 1997 and $220 per month per child thereafter.[5]

Husband's final assignment of error concerns the unequal property division. Despite the statutory presumption of equal contribution to the acquisition of martial assets under ORS 107.105(1)(f), the trial court concluded that wife should receive the greater portion of the martial property in order to purchase a house and to provide a home for the children.[6] It is correct that the statute contemplates that the

---

[5] Under the applicable guidelines, the amount of child support is influenced by the amount of spousal support award. A decrease in spousal support results in an increase in child support. Both children will be age 18 by the time that the final step in spousal support becomes effective.

[6] At trial, both parties agreed that the family residence should be sold.

division of marital property be "just and proper in all the circumstances" and that the consideration of the needs of the children in an award is a proper consideration. Nonetheless, the children in this case are ages 17 and 14 and the need for wife to purchase another family residence must be considered in light of their ages, the parties' debts and the resulting disparity if the trial court is affirmed. *Moore v. Moore*, 56 Or App 90, 93, 641 P2d 74 (1982).

■     Under the trial court's award, wife receives approximately $89,000 more than husband in addition to spousal and child support. That award would benefit her beyond the time required to provide a residence for the children. Also, according to the court file, the parties' residence was sold in October 1997. Therefore, a postponement of the sale of the residence until the children have reached the age of majority is not an option. Finally, in light of the parties' finances, there can be no realistic expectation that the parties will enjoy a standard of living comparable to that experienced during the marriage. We conclude, under the circumstances, that awarding wife the long half of the proceeds of the martial assets results in an unfairness to husband. Although wife may perceive husband as the cause of the sale of the family residence,[7] property division in the dissolution of a marriage is not a product of assigning fault. ORS 107.036(3); *Koch and Koch*, 58 Or App 252, 255, 648 P2d 406 (1982). We hold that husband is to receive one half of the net proceeds of the sale of the residence and vehicles after all the debts of the parties are satisfied. On remand, the trial court is to enter judgment in accordance with this opinion.

Judgment modified in the following particulars: Husband to pay wife spousal support in the sum of $1,000 per month for August and September of 1997; $700 per month for 46 months; $500 per month for an additional 24 months; husband to pay child support of $182 per month per child for August and September of 1997; $220 per month per child thereafter until each child reaches the age of 18, marries,

---

[7] Wife argues:

"Husband's actions resulted in the loss of his employment. * * * Husband elected to begin a meretricious relationship in Coos Bay and accept employment at a pay rate less than that of his prior employment."

dies, becomes emancipated, or until such child reaches the age of 21, so long as that child shall qualify as a "child attending school" pursuant to ORS 107.108. The parties' residence and vehicles are to be sold; the parties' debts are to be satisfied and the net proceeds from the sales are to be divided equally between the parties. Otherwise affirmed. Costs to husband, not including attorney fees.[8]

---

[8] When we say "costs to the parties not including attorney fees," we are not saying that a petition cannot be filed for attorney fees under the holding of *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 185, 957 P2d 1200 (1998).