Argued and submitted November 9, 2010, dissolution judgment modified to reduce award of spousal support to $400 per month and to correct property division to reflect that husband is receiving two loan receivables owed to him from Land Use Resources for the purchase of Mayette and Chalmers properties, for a total value of $14,224, rather than the full values of those properties plus loan receivables; otherwise affirmed April 20, 2011

In the Matter of the Marriage of

Hans Alexander HENDGEN,
*Petitioner-Appellant,*
*and*

Shauna Lynne HENDGEN,
*Respondent-Respondent.*

Yamhill County Circuit Court
DO070104; A138497

255 P3d 551

John H. Case argued the cause for appellant. With him on the brief was Feibleman & Case, P.C. On the reply brief was Stephanie F. Wilson.

Eric Larson argued the cause for respondent. With him on the brief were Robin J. Wright and Gevurtz Menashe, P.C.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

■    Husband appeals from a dissolution judgment, con-
tending that the trial court erred in awarding wife $4,000 in
indefinite spousal support, in valuing some of the parties'
marital property, and in dividing their property without
attributing to wife alone some debts that she incurred after
the parties' separation. On *de novo* review, ORS 19.415(3)
(2007),[1] we conclude that the dissolution judgment must be
modified to reduce the award of spousal support and to cor-
rect an error, which wife concedes, in the property valuation.
We affirm, however, with respect to the court's treatment of
the disputed debt.

The parties married in 1980 and had been married
for 26 years when they separated at the end of 2006. At the
time of trial, husband was 49 and wife was 46. Husband is in
good health. Wife has some health issues, including depres-
sion and an intestinal condition for which she takes medica-
tion. The parties have three children, one of whom is a minor
living with mother.[2]

The parties both graduated from high school.
Throughout the marriage, they have been self-employed,
supporting the family primarily through investing in resi-
dential and commercial real estate. The parties created two
limited liability companies to own and manage their
properties.

Although the parties were joint owners of the busi-
ness, husband was the principal provider of income for the
family. Husband located, purchased, developed, and sold real
estate. At the beginning of the marriage, wife helped him
manage the properties; after the birth of the parties' first
child, wife worked primarily as homemaker and primary
caretaker of the parties' children, but she also worked in the
office, completing the payroll and helping to keep the books.

---

[1] ORS 19.415, which governs our standard of review in this case, was recently
amended. Or Laws 2009, ch 231, §§ 2-3. The amendments apply to appeals in which
the notice of appeal was filed on or after June 4, 2009. Because the notice of appeal
in this case was filed before that date, the amendments do not apply.

[2] The parties bifurcated the issues of custody, parenting time, and child sup-
port, which are to be addressed in a supplemental judgment.

The parties enjoyed success in their business from the beginning, and the trial court found that they had a high standard of living throughout the marriage. Their income peaked in 2003 and 2004, with incomes of $474,531 and $436,927, respectively, primarily derived from the sale of timber and real estate in the Portland area. In 2005, the parties sold properties in Dallas and McMinnville in order to purchase an Alabama shopping center. The Alabama property has generated a net income of approximately $150,000 per year for the parties and is expected to continue to do so indefinitely. In 2005, the parties had income of $234,514; in 2006, they had income of $149,218. Husband testified that investment income has declined and that the only source of income in 2006 was the Alabama property.

Husband testified that, because of the downturn in the real estate market, the parties currently have no prospects for income from their holdings, other than from the Alabama property, and that they are also faced with significant debt on a property husband would like to sell. He explained that the division of the parties' assets in the dissolution will reduce his ability to borrow funds for future investment. He testified that he no longer plans to seek out investments and has decided to live off the income from the Alabama property. Husband asked the trial court to award him the family residence, which includes a farm that earns a net income of approximately $25,000 per year, and to determine his future income based on that income and the income from the Alabama property. Other than that income and the history of the parties' earnings in the four years before trial, there is no evidence in the record concerning husband's future income, and the court did not make findings concerning the parties' future incomes or earning capacities.

The primary assets of the marriage are the marital residence, valued at over $1.2 million (encumbered by debt of approximately $400,000), several investment properties, including the Alabama property, and personal property. During the marriage, the parties kept large amounts of cash—between $60,000 and $100,000—in an envelope in the home, for miscellaneous expenses. After the parties separated, that

money disappeared; each party blames the other for its disappearance. The trial court found, and we agree, that the evidence was not sufficient to establish either the amount of money that had disappeared or who should be accountable for it. The court charged neither party with the inability to account for those funds.

The court made an equal division of the remaining martial property. In dividing the real property, the trial court determined that the marital residence would be sold and the proceeds divided equally between the parties. As requested by the parties, the trial court ordered that the parties remain equal owners of the Alabama shopping center, so as to provide each of them with equal incomes of approximately $6,236 to $7,500 per month.

In considering wife's request for spousal support, the court found that there was a "substantial disparity" in the parties' earning capacities and anticipated incomes. The court found that, although each party will have the same income from the Alabama property, husband has much greater earning potential as a result of his training, work experience, and past employment, and that, despite the current slowdown in the real estate market, husband's earning potential "is substantially in excess" of wife's. Accordingly, the trial court concluded that an award of maintenance support was appropriate.

Wife estimated that her monthly expenses were not less than $13,300. The trial court rejected that level of financial need, however, explaining that it was not justified in light of the real estate market and the decline in the family's income since 2004. The court determined that it was just and equitable to award wife indefinite monthly maintenance spousal support of $4,000. The court did not explain how it arrived at that amount.

Husband contends in his first assignment of error that the trial court erred in awarding wife indefinite support or, for that matter, in awarding any support at all. Husband asserts primarily that an award of spousal support is not justified by the record, in the absence of evidence that husband has income from any source other than the shopping center property that was equally divided between the parties. Further, husband contends, the trial court's award results in a

substantially unequal division of the parties' financial resources, with wife having a combined income after support of $122,800, and husband having an after-support income of only $26,832. In husband's view, in light of the trial court's equal division of the marital property, including the income-producing property, resulting in roughly equivalent monthly incomes for the parties, and in the absence of evidence that husband's income will be higher than wife's, the trial court erred in awarding any spousal support. Husband asserts further that he does not have the ability to pay support of $4,000 each month without borrowing.

Wife points out that an equal division of property does not necessarily preclude an award of spousal support. *See, e.g., Cullen and Cullen,* 223 Or App 183, 194 P3d 866 (2008) (spousal support not precluded because a party also received a large property award); ORS 107.105(1)(d)(C)(v) ("[W]age earner's continuing income may be a basis for support distinct from the income that the supported spouse may receive from the distribution of marital property[.]"). Further, she contends, since the beginning of the marriage, the parties have enjoyed a high standard of living, despite the fact that, because of the nature of the land development business, their incomes have fluctuated over the years. Even with those fluctuations, wife points out, over the last four years, their income has averaged $30,000 per month. In light of the trial court's finding that husband is the primary earner, wife asserts, and despite the absence of evidence of future income above the Alabama property income and husband's statement of his intention to no longer work in land development, the trial court could make an award of spousal support based on past income and husband's earning capacity. *See Christensen and Christensen,* 123 Or App 412, 415, 859 P3d 1192 (1993) (in determining spousal support, the trial court is not limited to consideration of the income that husband was earning at the time of trial, but could take into account the record of the parties' earnings, their work histories and other factors in determining earning capacities).

Husband acknowledges that, in the absence of evidence of actual income, a court may make an award of spousal support based on a forecast of the obligor's earning capacity. He argues, however, that, although spousal support may be based on forecasted income, the forecast itself cannot be

based on speculation but must be based on reliable estimates of future income. *Weber and Weber*, 184 Or App 190, 201, 56 P3d 406 (2002), *rev'd on other grounds*, 337 Or 55, 91 P3d 706 (2004) (although spousal support may be fixed based on forecast income, the forecast must be predicated on facts existing at the time the award is made). He asserts that the record in this case shows that the parties' incomes in 2003 and 2004 were due to extraordinary sales of property that will not be repeated in the future and that cannot be the basis for an estimate of future earning capacity.

Further, husband contends, support cannot be set at an amount higher than what the obligor spouse can afford to pay at the time of dissolution. *Waterman and Waterman*, 158 Or App 267, 271, 974 P2d 256 (1999) (the record must demonstrate evidence of a higher income to demonstrate husband's present ability to pay higher level of spousal support). He contends that, based on the evidence of the parties' actual current incomes and husband's own expenses, he cannot afford to pay the support ordered by the trial court. In any event, husband contends, because the trial court made no estimate of his earning capacity in excess of the income that he and wife will be sharing from the Alabama property, the trial court's award of support was speculative and therefore inappropriate.

Husband cites *Staab and Staab*, 102 Or App 233, 793 P2d 350 (1990), as an example of a case involving similar circumstances. *Staab* involved a long-term marriage in which the parties' income was derived from a family business, a nursery. The husband had worked in the business as a nurseryman, propagator, and landscaper, but testified that work in the field would be hard to find in the future. The wife had worked as a secretary and bookkeeper in the business. The trial court ordered the business sold and the proceeds divided equally between the parties. The court also awarded the wife spousal support of $350 per month for three years. Although there was no evidence in the record in *Staab* as to the husband's earning capacity, the court awarded support based on its instinct that wife had a right the some support. *Id.* at 236. We reversed the award, explaining:

"Unless supported by the evidence, the trial court's 'instincts' are an improper basis on which to award spousal support. In this case, there is no evidence to indicate that husband has a greater earning capacity than wife. Given the property division, husband and wife will separate on an approximately equal basis, without the provision for spousal support."

*Id.* at 236-37.

Husband contends that in this case, as in *Staab*, the parties operated the business together, with husband generating business income and wife running the office. As in *Staab*, the trial court equally divided the main income-producing asset, leaving the parties in an equal position. Husband contends that here, as in *Staab*, in light of the real estate market and husband's grim prospects for reviving his real estate development career, there is no reason to assume that his income will be any higher than the amount he will receive from the Alabama property, which is equal to wife's.

Wife contends that an award of support was appropriate in this case because, despite the equal division of income-earning property, as the trial court found, husband's earning capacity is much greater than wife's. Further, wife contends that, in light of the trial court's finding that husband was the primary wage earner in the family, in order to determine husband's potential earning capacity, one need only take an average of the parties' incomes during the four years immediately preceding the dissolution. That calculation results in average earnings of approximately $30,000 per month.

■ On *de novo* review, we agree with wife that there are factors in this case that justify an award of indefinite support. Wife's health issues and more limited work experience, in comparison with husband's substantial experience as a developer in the real estate market, lead reasonably to the conclusion that husband has the greater earning capacity. Husband certainly has the capacity to earn income above the passive income that he will be receiving from the Alabama investment, which requires no additional effort on his part, and we believe that that additional income is significantly above a minimum wage. The length of the marriage and

the parties' standard of living during the marriage also suggest that an award of support is appropriate. ORS 107.105(1)(d)(C).

However, husband is correct that, in order for the court to make an award of support, there must be evidence of the obligor spouse's future earning potential and ability to pay. The trial court clearly was skeptical of husband's testimony that his income would be limited to the payments from the Alabama property, as that is the only possible justification for the award of $4,000 per month in spousal support. We, like the trial court, think it likely that husband's earning capacity is higher than wife's, and that it is unlikely that husband will remain retired and not earn any income over the Alabama income. However, on this record, it would be pure speculation to place a dollar figure on what that additional income might be. Even assuming husband's greater earning capacity, support cannot be determined in the absence of evidence of what that earning capacity might be. *See Weber*, 184 Or App at 201 (although spousal support may be fixed based on forecast income, the forecast must be predicated on facts existing at the time the award is made).

In *Potts and Potts*, 217 Or App 581, 590, 176 P3d 1282 (2008), we said that

> "the purpose of an award of spousal support is not to eliminate all disparities in the parties' incomes. Rather, * * * the aim of indefinite maintenance spousal support is to enable the parties to live separately at a standard of living not overly disproportionate to that enjoyed by them during the marriage, to the extent possible."

(Citations omitted.) In this case, based on the evidence in the record, it would appear that the division of the parties' assets has largely accomplished that objective. Wife has been awarded a substantial income-producing asset that will provide her with monthly income between $6,200 and $7,500. That amount does not approach the expenses of over $13,000 that wife listed on her uniform support affidavit, but it should allow her to live within a more modest lifestyle. The sale of the marital residence and equal division of its equity will allow wife to purchase a home. We conclude that on this

record, an award of support of $4,000 in addition to the property division was purely speculative, far exceeds husband's ability to pay, and was not just and equitable. We therefore modify the judgment to provide for an award of $400 in indefinite monthly support, which is within husband's current ability to pay and will assist wife with approximately half of her monthly medical expenses. Should the parties' earning capacities become less speculative in the future, that could constitute a substantial change in circumstances justifying a reconsideration of spousal support.

In his second assignment of error, husband contends that in the property division, the trial court erred in attributing to him the full value of two properties, Chalmers and Mayette, when his only interest in those parcels are receivables based on loans made to the properties' owner, Land Use Resources. As noted, wife concedes that husband is correct that the trial court erred in attributing to husband the value of two properties and that the judgment should be modified to reflect a distribution to husband of loan receivables of $14,224 on both properties.

In his third assignment of error, husband contends that the trial court erred in its treatment of wife's post-petition expenditures, which he contends were far in excess of the amount necessary for wife to live on, especially considering that husband was providing support during that time. The expenditures are reflected in wife's withdrawal of significant amounts from various accounts owned by the parties and by an additional incurred debt on the parties' credit card. Wife explained that she expended the funds and incurred the debt in order to run the household, including paying for food, gas, utilities, clothing, entertainment, repairs, and a handyman, and that she had to do so because husband had denied her access to other sources of funds. The trial court found that the evidence was not sufficient to allow the court to determine that wife's expenditures were grossly disproportionate to the standard of living to which she had been accustomed during the marriage.

Husband contends that wife has failed to explain how she spent the money and that the property division should have taken into account wife's excessive credit card

expenditures. We conclude that the trial court was correct in finding that the record does not reflect that wife's expenditures were for other than appropriate household expenditures.[3]

Dissolution judgment modified to reduce award of spousal support to $400 per month and to correct property division to reflect that husband is receiving two loan receivables owed to him from Land Use Resources for the purchase of Mayette and Chalmers properties, for a total value of $14,224, rather than the full values of those properties plus loan receivables; otherwise affirmed.

---

[3] Because of our conclusion, we do not address wife's motion to strike the third assignment of error.