Argued and submitted July 30, 2012, affirmed December 26, 2013, petition for review denied April 17, 2014 (355 Or 317)

In the Matter of the Marriage of

Andrea Kay CORTESE,
*Petitioner-Respondent,*
*and*

Joseph Giuseppi CORTESE,
*Respondent-Appellant,*
*and*

Raffael CORTESE
and Francesca Cortese,
*Appellants.*

Clackamas County Circuit Court
DR09110671; A147560

317 P3d 340

Helen C. Tompkins argued the cause and filed the briefs for appellants.

Richard W. Todd argued the cause for respondent. With him on the brief was Todd & Shannon.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

ORTEGA, P. J.

### ORTEGA, P. J.

Husband appeals a general judgment of dissolution awarding spousal support, an order of contempt for violating that general judgment by not paying spousal support, and a supplemental judgment awarding attorney fees. We write to address husband's first assignment of error, that the trial court's transitional spousal support award was based on a finding of his earning capacity that the record does not support. We conclude that the trial court did not err in that award and reject husband's other assignments of error without discussion. Husband's parents also appeal the dissolution judgment, challenging the award of certain personal property to wife, and we likewise conclude that the trial court did not err in that award. Accordingly, we affirm.

We begin with a procedural summary. Wife, married to husband since 1993, petitioned for dissolution of their marriage in November 2009 in Clackamas County Circuit Court. Shortly before the original trial date (which was ultimately set over to a later date), parents filed a lawsuit against husband in Multnomah County Circuit Court alleging that he owed them about $76,000. At the time, husband was living in parents' home. That court entered a default judgment against husband, and the following month issued a writ of execution to the Clackamas County Sheriff, ordering the satisfaction of the default judgment amount out of husband's personal property. Parents' attorney instructed the sheriff to levy and sell a Dodge Viper, some other vehicles, and firearms, all of which were located at the family home, where wife was then living. Shortly thereafter, the sheriff seized the Viper and other items and provided notice of a public auction date. When wife learned of the default judgment and efforts to execute it, she objected to the sale of any marital property, and the sheriff's sale was postponed pending the outcome of the dissolution hearing.

Wife then moved to join parents as necessary parties to the dissolution proceeding so that complete relief could be accorded to husband and wife, and the trial court granted that motion. After the dissolution trial, the court entered a general judgment ordering husband to pay child support of $457 per month and transitional spousal support of $1,500

per month for three years, to be followed by maintenance spousal support of $1,000 per month for seven years. The court based the spousal support award on its determination that husband's earning capacity was $8,000 per month. The trial court divided husband and wife's assets and debts, awarding the Viper to wife free of any claim by husband or parents. Husband and parents appealed.

Several months after the appeal was filed, the trial court held husband in contempt for violating the dissolution judgment by failing to pay spousal support, and husband amended his notice of appeal to include the contempt order. A few months later, the trial court entered a supplemental judgment against husband awarding wife $25,000 in attorney fees under ORCP 68, based on its conclusions that the dissolution proceeding "was made substantially more difficult because of [husband's] conduct" and that husband "significantly increased [wife's] legal fees by failing to comply with discovery requests, by secreting assets, and by generally being less than forthright in his approach to resolution of this case." The court found that husband "did all he could to protect his parents at the expense of [wife]." Husband again amended his notice of appeal to include that supplemental judgment.

Husband asks that we review the award of transitional spousal support *de novo*. *See* ORS 19.415(3)(b) (providing for discretionary *de novo* review on appeal in certain equitable actions); *Turner and Muller*, 237 Or App 192, 194-98, 238 P3d 1003 (2010), *rev den*, 350 Or 231 (2011) (exercising discretionary *de novo* review in a domestic relations case). Parents do not make a similar request with regard to the award of the Viper to wife. We do not view this as the type of exceptional case that justifies *de novo* review, and therefore decline to exercise such review. *See* ORAP 5.40(8)(c). Accordingly, we review the trial court's award of spousal support and the Viper to wife for legal error and "state the facts consistently with those found by the trial court to the extent that there is evidence to support them." *Nice v. Townley*, 248 Or App 616, 618, 274 P3d 227 (2012); *see Kirkpatrick and Kirkpatrick*, 248 Or App 539, 541 n 1, 273 P3d 361 (2012) (the court states "the facts consistently with the trial court's

express and implied findings, supplemented with the uncontroverted information from the record").

We begin with husband's challenge to the spousal support award, which centers on husband's argument that the trial court's determination that his potential earning capacity was $8,000 per month was based on "instinct" and not supported by evidence in the record. At the time of trial, husband owned a business that sold automotive service equipment. Once prosperous, its fortunes took a turn for the worse after losing a franchise in Canada. Husband had been earning a monthly salary of $12,000, but stopped receiving any salary three months after wife filed for divorce. In 2010, in the months leading up to the trial, a significant amount of money—about $120,000—was deposited in one of the business checking accounts and then debited without an explanation. Husband had actively managed and operated the business since 1998, but by the time of trial, he had hired someone else to run the business so that he could have time to look for a job. Husband applied for two jobs in the eight months after he stopped receiving a salary from his business and before the trial. He has a bachelor's degree in automated manufacturing and an associate's degree in electronic engineering. Before starting his business, husband had worked in the field of automotive service equipment.

Wife has a high school diploma and was a stay-at-home parent for most of the marriage. She worked as a preschool physical education teacher for about two years before the dissolution trial, earning $11 an hour without any paid vacation or medical insurance benefits. At the time of trial, wife received about $500 monthly in supplemental nutritional assistance. Husband, at the time of trial, collected unemployment insurance of $1,800 per month while he lived with his parents. In addition to his unemployment income, husband received from his business family health insurance in the amount of $945 per month, as well as reimbursement for his family's cell phone expense and use of a credit card for personal expenses in the amount of about $1,000 per month.

Husband contends that the trial court should have used his actual income, which he pegs at $1,800 per month,

in setting transitional spousal support, rather than the $8,000 per month which the court found was his earning capacity. Husband relies primarily on two cases in which we concluded that an award of spousal support based on projected income rather than actual income was too speculative: *Waterman and Waterman,* 158 Or App 267, 974 P2d 256 (1999), and *Hendgen and Hendgen,* 242 Or App 242, 255 P3d 551 (2011).

In *Waterman,* exercising then-mandatory *de novo* review,[1] we held that the husband's spousal support obligations should be based on his actual income, rather than his past income or income potential, because there was little evidence to rebut his testimony that a higher wage was not available to him. 158 Or App at 271. We recognized that the term "earning capacity" in ORS 107.105(1) allows the trial court to consider a spouse's past income and "income potential," but also noted that the court must be "circumspect about imposing a support award based on income not presently available." *Id.* Nevertheless, we acknowledged that, in some cases, spousal support may be based on earning capacity higher than actual income when the obligor has not presented evidence that could explain the inability to earn an amount consistent with past income. *Id.; see also Pagano and Pagano,* 147 Or App 357, 362-64, 935 P2d 1246 (1997) (concluding that earning capacity and job opportunities could be considered when there was nothing that would prevent the obligor from practicing medicine in the future); *Gable and Gable,* 89 Or App 664, 668-69, 750 P2d 534 (1988) (reasoning that the trial court properly considered earning capacity instead of actual unemployment income when the obligor had quit his dental practice just before trial and there was no evidence of any physical or professional impediment that would have prevented him from working as a dentist)).

Likewise, in *Hendgen,* also on *de novo* review, we modified an award of spousal support where the trial court had not explained how it arrived at the amount awarded. 242 Or App at 246. We noted that a spousal support award cannot be based on "pure speculation" or "instinct" as to

---

[1] Our standard of review was controlled by a prior version of ORS 19.415(3), which required *de novo* review of domestic relations cases.

what an obligor's income potential above any actual income might be. *Id.* at 248-50.

We recently reached a similar conclusion even though not exercising *de novo* review in *Andersen and Andersen*, 258 Or App 568, 310 P3d 1171 (2013). There, despite evidence that an economic recession had affected the husband's ability to earn as much as he had in the past as an attorney in solo practice, the trial court had found that the husband was capable of earning $8,000 per month, though his actual income was only $2,700 per month. *Id.* at 576. Applying *Waterman* and *Hendgen*, we explained that (1) "if one spouse contends that the other's earning capacity exceeds his or her actual income as established at trial, the former bears the burden of establishing that fact" and (2) "that burden can be sustained only by reference to non-speculative evidence of *present* earning capacity, and mere reliance on attenuated earning history is legally insufficient." *Id.* at 584 (emphasis in original). We concluded that the trial court had erred in relying on the husband's past income as the basis for his current earning capacity:

> "[G]iven the uncontroverted circumstances at the time of the dissolution—*viz.*, the downturn in the construction and legal services industries—the evidence that husband had earned a higher income in the past and that he is a reputable lawyer, was, without more, legally insufficient to support a nonspeculative finding that, at the time of the dissolution, husband was capable of earning $8,000 per month."

*Id.* at 584.

Those cases caution against reliance on evidence of past, attenuated income or "instinct" for determinations of earning capacity. We note, however, that the obligor spouses in those cases provided evidence of the unavailability of higher wage jobs or of other economic circumstances that constrained their capacity to earn more than their actual income at the time of trial. *See Andersen*, 258 Or App at 584; *Hendgen*, 242 Or App at 249; *Waterman*, 158 Or App at 271. In the absence of evidence of "uncontroverted circumstances" constraining actual income, reliance on evidence of the obligor's work history, experience and skills, and past income is not necessarily speculative and can

support a determination of earning capacity. As explained in *Christensen and Christensen*, 123 Or App 412, 415, 859 P2d 1192 (1993), "The trial court is not bound by the fortuity of what may be a temporary business downturn or short-term reduction in pay. It may, instead, take into account the record of the parties' earnings, their work histories and other factors in determining their earning capacities for the purposes of awarding spousal support[.]"

The record in this case lacks the kind of evidence found in *Waterman, Hendgen,* and *Andersen* that husband could not earn more than his actual income; instead, husband's work history, experience and skills, and past income provide a nonspeculative basis for concluding that he is capable of earning at least $8,000 per month. Husband's salary only months before the dissolution trial was $12,000 per month until he stopped taking a salary entirely. Moreover, he continued to receive income from his business in the form of health insurance, reimbursement for cell phone bills, and the use of a credit card, and "significant cash flow" had passed though husband's business bank accounts for which he had not accounted. Although husband testified that his income was limited to unemployment benefits, the trial court found him not to be credible. Contrary to husband's contention, the trial court's observations that he was "hard-working," "creative," and "successful" were not mere "instinct." Moreover, although the court found that husband's business has little value as an asset, it nevertheless determined that the business was a viable enterprise that had a "future" and that husband had failed to use his skills to "make his business a continued success" during the pendency of the dissolution proceeding.

Further, the trial court found that husband had failed to make a meaningful effort to obtain employment. Husband had applied for only two jobs in the several months before trial despite hiring someone else to manage some of his business's affairs so that he could seek employment. Husband provided little testimony about his job search that would explain his efforts or his lack of success in finding a job. This case lacks the kind of evidence of circumstances constraining income that the obligor spouse presented in

*Andersen*. Accordingly, the trial court's findings are legally sufficient to support its determination that husband's earning capacity was $8,000 per month even though his actual income was less than that, and it did not err in its consequent award of transitional spousal support.

We turn to parents' challenge to the award of the Viper to wife. The trial court divided the personal property of husband and wife, awarding to husband, among other items, several vehicles, and awarding to wife, among other items, a Volkswagen Beetle and the Viper. The court also apportioned the parties' debts, ordering that husband pay the judgment owed to parents. Parents, however, identified the Viper and several other vehicles and items as personal property to be seized and sold by the sheriff in satisfaction of the default judgment against husband. Parents challenge the court's authority to award the Viper to wife—but not its authority to award the other vehicles to husband—assigning error to the trial court's exercise of jurisdiction over them and their claim to personal property and contending that, if they do not own the Viper outright, they hold a security interest in it. We conclude that the trial court did not err in its award of the Viper free of any encumbrance from parents.

We begin with the facts and procedural history relevant to our disposition. From the beginning of the dissolution proceeding, wife was concerned that husband would improperly transfer marital assets. Shortly after wife petitioned for dissolution, she moved for an order restraining disposition of the parties' assets. She stated in an affidavit in support of that motion that husband "has told me on numerous occasions that he has hidden assets and will continue to do so." The trial court granted wife's motion and issued a restraining order which prohibited both parties from "selling, conveying, transferring, damaging, encumbering, secreting, or in any other way disposing of any assets of the parties while [the dissolution] proceedings are pending." Husband and wife recognized that the Viper was subject to the restraining order; in April 2010, wife moved to modify the order to allow the sale of the Viper, but later agreed with husband not to have it sold.

When parents filed their lawsuit seeking to recover money owed to them, they named husband but not wife, and obtained a default judgment awarding them more than $76,000 plus interest. Stark, the attorney who represented parents in that lawsuit, testified at the dissolution hearing that he first met husband around the time the lawsuit was being prepared and that husband was "basically helping [parents] and acting as—a communication assistant" for them in connection with their claim against him. Stark further testified that he frequently spoke with husband about preparing the lawsuit against him, even more than with parents. Once the writ of execution was issued, parents directed the sheriff to seize the Viper (along with other items). Stark testified that husband handed over the title to the Viper and cooperated with its seizure.

Parents now challenge the trial court's exercise of jurisdiction over them and over the Viper. Those challenges are not well taken. The trial court, upon wife's motion, joined parents under ORCP 29 A, which provides:

> "A person who is subject to service of process shall be joined as a party in the action if (1) in that person's absence complete relief cannot be accorded among those already parties or (2) that person claims an interest relating to the subject of the action and is so situated that the disposition in that person's absence may (a) as a practical matter impair or impede the person's ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of their claimed interest."

Wife correctly points out that failure to join parents, who claim a possessory interest over the marital assets, might have prevented the trial court from dividing those marital assets as "may be just and proper in all the circumstances" under ORS 107.105(1)(f). *See McGoldrick and McGoldrick*, 85 Or App 412, 416, 736 P2d 622 (1987) (noting that a conveyance of real property to the husband's children could not be set aside if the grantees were not made parties to the dissolution proceeding).

Parents' challenge to the court's authority to dispose of the Viper likewise is not well taken. After the parties

postponed the auction sale, the sheriff delivered the Viper to husband and parents obtained possession of the title. Parents have not explained how physical custody of the title without legal transfer of ownership gave them ownership of the Viper. They also assert, in the alternative, that they hold a security interest in it under ORS 18.878(2) (providing that, "[w]hen a sheriff levies on personal property * * *, the interest of the judgment creditor in the personal property is the same as that of a secured creditor with an interest in the property perfected under ORS chapter 79"). In all events, whatever marital possessory interests are, for the reasons explained below, we conclude that the trial court had the authority to divide the marital assets and liabilities, awarding wife sole possession of the Viper, free of any encumbrance by parents or husband.

In a dissolution case, the court may order "the division or other disposition between the parties of the real or personal property, or both, or either or both of the parties as may be just and proper in all of the circumstances." ORS 107.105(1)(f). ORS 107.115(1) provides, in part, that a "judgment gives the court jurisdiction to award, to be effective immediately, the relief provided by ORS 107.105." In *Hoyt v. American Traders. Inc.*, 301 Or 599, 609, 725 P2d 336 (1986), the Supreme Court described the jurisdictional authority of the dissolution court with regard to the disposition of real property this way:

"[T]he very filing of a petition for dissolution involving a claim for an award or division of described real property manifestly brings into issue the parties' respective interests in the described real property. That ORS 107.105(1) and ORS 107.115(1) require that the court grant a decree of dissolution to exercise the further power to divide the property does not alter the inescapable fact that the dissolution proceeding involves, affects or brings into question the title or interest in the described real property."

Thus, once the petition for dissolution is filed, a married couple's property interests are at once brought into question and all of the marital assets are subject to an equitable apportionment by the trial court. *See Hoyt v. American Traders, Inc.*, 76 Or App 253, 256, 709 P2d 1090 (1985) (quoting *Slauson v. Usher*, 39 Or App 303, 308 n 3, 592 P2d 247,

*rev den,* 287 Or 129 (1979) ("The trial court has jurisdiction over *all* property of the parties under [ORS 107.105(1)(e)[2]]." (Emphasis in *Slausen.*)).

In recognition of this jurisdictional authority of the trial court during the pendency of dissolution proceedings, we have previously addressed the disposition of marital property where others with an interest in that property had actual notice of the pending dissolution proceeding and have concluded that they held those interests subject to a dissolution judgment. For example, in *Strawn v. Eder,* 97 Or App 281, 775 P2d 912 (1989), the husband entered into a five-year lease of marital property after the wife filed for dissolution but before the trial court awarded the property to the wife. The lessee had actual knowledge of the pending dissolution proceeding. *Id.* at 283-84. We concluded that the lessee's possessory rights were subject to any rights in the property that the wife obtained in the dissolution hearing and that she was entitled to exclusive possession of the property. *Id.*

Similarly, in *Slauson,* a third party took a deed from the wife to property that a dissolution judgment had made subject to an option by the husband. 39 Or App at 305-06. The third party argued that its possessory interest in the property should not be subject to the option because it did not have actual notice of the option awarded in the dissolution decree. *Id.* at 306. We concluded that the third party had inquiry notice of the option to purchase because of its awareness of the dissolution proceeding before taking the deed. *Id.* at 308-09. We held that a third party "is deemed to have been aware" of the power of the trial court in a dissolution decree, under ORS 107.105(1), to divide the marital assets "as may be just and proper in all the circumstances." *Id.* at 309. Accordingly, we concluded that the third-party purchaser's interest in the property was subject to the husband's option to purchase as awarded in the dissolution decree. *Id.*

*Melkonian and Melkonian,* 55 Or App 586, 639 P2d 662 (1982), which parents cite in support of their argument that the trial court lacked jurisdiction over their claim to the

---

[2] *Former* ORS 107.105(1)(e) (1981), *renumbered as* ORS 107.105(1)(f) (1983).

*Viper*, does not assist them. In that case, we concluded that the trial court did not have jurisdiction over securities that were held in trust for the benefit of the parties' daughter. *Id.* at 588-90. That case is inapposite here because it did not concern the conveyance of marital property to a third party with actual knowledge that the property was subject to the trial court's disposition in a dissolution judgment. Rather, the trust was the daughter's property, consisting of securities placed in trust for her benefit by the husband's mother, and was not a marital asset. *Id.*

Here, the trial court explicitly found that parents had actual notice not only of the dissolution proceeding but of the restraining order itself. Additionally, the court found that parents' default judgment against husband "was largely orchestrated by [husband] and calculated to divert marital assets to * * * parents in contravention of the asset restraining order in this proceeding." Therefore, parents are deemed to have been aware that any attempt to obtain a possessory interest in property subject to disposition in the dissolution proceeding—that is, under ORS 107.105(1)(f), personal property belonging to either husband or wife, or both of them—was ultimately subject to the jurisdiction of the court in the dissolution proceeding.

Given parents' actual notice of the dissolution proceeding, any possessory rights or security interest that they obtained in the Viper by way of the default judgment and writ of execution against husband was taken subject to the trial court's authority in this proceeding to effect a division of assets that is "just and proper in all the circumstances." ORS 107.105(1)(f). Therefore, the trial court acted within that authority when it awarded the Viper to wife free of any encumbrance by parents.

Affirmed.