No. 20 January 10, 2024 169

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Marriage of

STEFANIE GOTT-DINSMORE,
*Petitioner-Respondent,*

*and*

MICHAEL DINSMORE,
*Respondent-Appellant.*

Deschutes County Circuit Court
19DR04489; A176616

Alicia N. Sykora, Judge.

Argued and submitted October 6, 2022.

Ruth Casby argued the cause for appellant. Also on the briefs were Janet M. Schroer and Hart Wagner LLP.

Helen C. Tompkins argued the cause and filed the briefs for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Husband appeals from a general judgment dissolving the marriage and awarding support to wife. On appeal, he raises two assignments of error relating to the amount of spousal support that the trial court ordered. He also appeals from the supplemental judgment that awarded wife attorney fees. We conclude that the trial court did not impermissibly rely on evidence of husband's past income and did not abuse its discretion when it determined that husband's income was $230,000 for the purposes of calculating spousal support. We further conclude that the trial court did not abuse its discretion when it set compensatory spousal support at $1,500 per month for six years. Husband's arguments against the attorney fee award in the supplemental judgment are based on his position that the trial court erred in its spousal support order. Because we affirm the general judgment, we do not disturb the trial court's award of attorney fees to wife. Accordingly, we affirm.

We recount some background facts here for context and discuss additional relevant facts in our analysis of each assignment of error. The parties were married in 1995. When they met, husband was working at McDonalds and later worked as a cab driver. Wife earned her bachelor's degree, but then worked as a janitor and auto detailer to support husband while he obtained a bachelor's degree in English and master's degree in teaching English. Husband taught English for about a year before switching careers to work in the tech industry. From 2000 to 2005, wife worked in retail and at a car rental company. In 2005, by mutual decision, wife stopped working to care for their first child and did not work outside the home for the remainder of the parties' marriage.

In 2006, husband began maintaining and building data centers for companies like Google, Facebook, and Salesforce, switching jobs multiple times and progressively earning higher pay. Between 2009 and 2013, husband made between $90,000 and $200,000 per year, and between 2014 and 2019 he made more than $199,000 per year. Every year between 2013 and the time of trial, husband has received

a bonus or stock compensation worth more than $195,000. The parties separated in 2018.

Wife filed for dissolution of marriage in March 2019. The parties agreed on custody, parenting time, and the division of marital assets and debts, but disagreed on the issue of spousal support. Husband was laid off from Salesforce on October 31, 2020. His gross income that year, which included $67,378 in severance pay, was $348,928.

The court held a trial in January 2021 to resolve the spousal support issue. Both husband and wife testified, as did a certified public accountant. The parties also submitted documentary evidence in support of their positions. At that time of trial, wife was studying for her master's degree in social work. She anticipated that when she graduated she could obtain a position at a starting salary of $50,000.

In a 21-page written order, the trial court made detailed factual findings and applied those findings to the factors in ORS 107.105(1). The trial court then determined that a just and equitable amount of spousal support to wife was as follows: $1,500 monthly transitional support for three years, $1,500 monthly compensatory support for six years, and $2,000 monthly maintenance support indefinitely. In the order, the trial court specifically found that husband's testimony lacked credibility. This appeal followed.

*Spousal support/earning capacity.* In his first assignment of error, husband argues that the trial court erred when it determined that his earning capacity was $230,000 for the purposes of spousal support. Specifically, husband takes the position that the court misapplied our case law by relying solely on evidence of his past income to determine his present earning capacity.

We review a trial court's determination of the amount of spousal support for abuse of discretion. *Colton and Colton*, 297 Or App 532, 542, 443 P3d 1160 (2019).[1] In reviewing that determination, we are bound by the trial court's findings of historical fact that are supported by any evidence in the record, and we will disturb the trial court's

_____

[1] Neither party seeks *de novo* review, nor is this an exceptional case in which we would grant it. ORS 19.415(3)(b); ORAP 5.40(8)(c).

determination of what constitutes a "just and equitable" amount only if the court "misapplied the statutory and equitable considerations required by ORS 107.105." *Berg and Berg*, 250 Or App 1, 2, 279 P3d 286 (2012). After a review of the record, we conclude that the trial court did not impermissibly rely on evidence of husband's past income and did not abuse its discretion when it determined that husband's income was $230,000 for the purposes of calculating spousal support.

"[I]n order for the court to make an award of support, there must be evidence of the obligor spouse's future earning potential and ability to pay." *Hendgen and Hendgen*, 242 Or App 242, 250, 255 P3d 551 (2011). Spousal "support cannot be determined in the absence of evidence of what that earning capacity might be." *Id.* Rather, the record must contain "nonspeculative evidence of *present* earning capacity[.]" *Andersen and Andersen*, 258 Or App 568, 584, 310 P3d 1171 (2013) (emphasis in original).

We have held that a trial court cannot rely solely on a spouse's past income when the record demonstrates that there are external constraints on the spouse's actual earning capacity. *Id.* at 584-85. In *Andersen*, we reversed the spousal support award when the sole evidence of the spouse's earning capacity was past income, the spouse was presently employed at a lower salary, and the record contained evidence of external constraints on that salary, specifically, an industry-wide downturn that diminished demand for the spouse's legal services. *Id.* at 584. In *Waterman and Waterman*, 158 Or App 267, 271, 974 P2d 256 (1999), we reversed a spousal support award for similar reasons, because the record contained evidence that higher paying jobs were unavailable to the spouse. And in *Hendgen,* 242 Or App at 248, 250-51, we reduced the amount of spousal support when the spouse's past higher income was based on significant sales of property, the spouse was presently retired, and the record lacked any evidence of the spouse's current ability to earn a higher salary than his retirement income. We also noted in *Hendgen* that the trial court made no findings concerning future income or earning capacity. *Id.* at 245.

Although *Waterman*, *Andersen*, and *Hendgen* limit the use of past income in setting earning capacity for spousal support, those cases do not stand for the proposition that a court can never use historical income for that purpose. Rather, "[i]n the absence of evidence of 'uncontroverted circumstances' constraining actual income, reliance on evidence of the obligor's work history, experience and skills, and past income is not necessarily speculative and can support a determination of earning capacity." *Cortese and Cortese*, 260 Or App 291, 296-97, 317 P3d 340 (2013), *rev den*, 355 Or 317 (2014); *see also Furlong and Furlong*, 120 Or App 105, 108, 852 P2d 233 (1993) ("We have never held that a court is precluded from forecasting a person's earning capacity in appropriate circumstances.").

Here, the record contains evidence from which the trial court could find that husband did not face the kinds of "uncontroverted circumstances constraining actual income" that would prohibit the trial court from relying on his past income to set earning capacity at $230,000. *See Cortese*, 260 Or App at 296-97. Husband argues that the trial court incorrectly characterized his statement that he could make $230,000 a year as an admission, when in fact it was just a "hypothetical and hopeful earning expectation." We do not need to decide whether husband's testimony amounts to a legal "admission." Even without husband's statement, the record contained sufficient evidence of husband's employment history, past income, knowledge, and skills for the trial court to set husband's earning capacity at $230,000.

Since 2009, husband has performed work that requires a high level of specialized knowledge and skill, including maintaining and building data centers for companies like Google, Facebook, and Salesforce. His earnings progressively grew and in his final year at Salesforce he earned $348,928. The record contains no evidence of an industry-wide downturn in the building and maintaining of data centers, or of a lack of employment opportunities for husband. Although husband's specific job at Salesforce was eliminated, he retained his significant work experience and expertise in a specialized industry, and there was no evidence that his skill set had become obsolete. *Cf. Yocum and*

*Pockett*, 328 Or App 613, 617, 537 P3d 979 (2023) (holding that the evidence did not support the trial court's determination that the spouse's potential income exceeded his present income when the evidence demonstrated that he had not worked as a research scientist in over 10 years and had looked for jobs in that field, but was unqualified because his skills were out of date and he had no recent experience).

In addition, even though husband claimed that parenting time obligations limited his employment opportunities to the Bend area, the record contained evidence to the contrary. Specifically, husband had searched for employment in the Seattle area and had participated in a Bend-centered parenting time schedule since 2019 without living in Bend full time.

Contrary to husband's arguments on appeal, the record contains evidence from which the trial court could determine that husband "had failed to make a meaningful effort to obtain employment" and that he was deliberately not working. *Cortese*, 260 Or App at 297 (noting that the spouse had "applied for only two jobs in *** several months" and "provided little testimony about his job search that would explain his efforts or his lack of success"). Husband's own job log listed only seven job recruitment contacts in the five months between his notice of termination from Salesforce and the time of trial, and at least three of those contacts were initiated by a recruiter rather than by husband. Although husband testified that he could make $80,000 repairing computers and that he could work on the Best Buy Geek Squad, he was not working there at the time of trial and, based on the evidence that he presented, the trial court could have found that he had rejected a job that would have paid him $150,000 a year. Apart from his testimony, which the trial court found lacked credibility, husband presented no evidence that he sought different jobs within Salesforce after learning that his position would be eliminated, or that he took advantage of the job placement services that the company offered.

In sum, without evidence of "'uncontroverted circumstances' constraining income" that prevent a trial court from relying on past income, the evidence of husband's "work

history, experience and skills, and past income" supported a nonspeculative determination of his $230,000 earning capacity. *Cortese*, 260 Or App at 296. The trial court did not abuse its discretion in the amount of spousal support that it imposed.

*Compensatory support.* In husband's second assignment of error, he asserts that the trial court's award of compensatory support in the amount of $1,500 a month for six years was "excessive" and not just and equitable considering the property division and child support provisions of the dissolution judgment. Husband makes two specific arguments in support of this assignment of error. First, he argues that wife's work to support them during the time he received his undergraduate and master's degrees is not statutorily significant because those degrees were in English, but his current career is in the tech industry. Second, he argues that wife's contribution was already accounted for in the property division because the marital estate benefitted from the parties' divided responsibilities during the time they were married until they separated in 2018. Accordingly, husband asserts that wife was "fully compensated" for her contributions to the marital estate in the property division and the "favorable" child support award.

We review a trial court's decision on the "amount of spousal support [that] is just and equitable for abuse of discretion." *Colton*, 297 Or App at 542 (internal quotation marks omitted). We will modify an award only if we find that the trial court's determination "falls outside the range of reasonableness by a significant enough margin." *Potts and Potts*, 217 Or App 581, 587, 176 P3d 1282 (2008).

The trial court did not abuse its discretion in crediting wife's work to support husband's education in the compensatory support determination. Evidence in the record supports the trial court's findings that husband was working at McDonalds when he met wife, that even with her college degree she worked as a janitor and auto detailer to allow him to obtain both an undergraduate and master's degree, and that husband used his skills from that education in his current profession. As the trial court noted, husband listed both his master's degree and specific skills he acquired from it on the resume that he used to obtain multiple positions

with six-figure salaries. Although husband views the evidence differently, much of his argument is based on his own testimony, which the trial court found not credible, and we do not reweigh evidence on appeal.

Similarly, the trial court did not abuse its discretion in awarding compensatory support in addition to the property division and child support. The trial court correctly determined that a court can award compensatory support even when there is an equal division of marital assets. *Cullen and Cullen*, 223 Or App 183, 191, 194 P3d 866 (2008).[2] The trial court then explicitly relied on the factors in ORS 107.105(1)(d)(B) to set the amount of compensatory support at $1,500 per month for six years. Such an approach was well within the range of legally permissible discretion.

Husband relies on *Hendgen* to argue that the property division in this case accomplished the purpose of compensatory support, but *Hendgen* does not support husband's argument. *Hendgen* involved an award of maintenance support, which serves an entirely different purpose than compensatory support. 242 Or App at 246; *see Harris and Harris*, 349 Or 393, 416-17, 244 P3d 801 (2010) (explaining that "each of the three categories of spousal support serves a different function"). Moreover, even though we reduced the maintenance support award in *Hendgen*, we did not hold that an equal property division will always subsume the need for spousal support, only that on the specific facts in that case, it "largely" did. 242 Or App at 250. The facts in *Hendgen* were materially different from those in this case, especially in terms of the disparity in earning capacity between the spouses. *See id.* at 246-47. Therefore, *Hendgen* does not lead to a conclusion that the trial court's decision in this case was an abuse of discretion. As the trial court correctly recognized, the determination of a just and equitable support award is highly fact-specific and will vary from case to case.

Having reviewed the record, we conclude that it supports the trial court's factual findings, both those specifically

---

[2]  Indeed, in a case like this one, where the higher-earning spouse had decades remaining on a "highly productive earning career," the Supreme Court determined that compensatory support was appropriate even in a case where the other spouse had received a "significant asset distribution." *Harris*, 349 Or at 414-15.

tied to the statutory factors and the more general findings that the court relied on in its just and equitable determination. With the facts as the trial court found them, compensatory support in the amount of $1,500 per month for six years was not "outside the range of reasonableness by a significant enough margin so as not to be just and equitable in the totality of the circumstances." *See Potts*, 217 Or App at 587.

Because we affirm the general judgment, we do not disturb the trial court's award of attorney fees to wife.

Affirmed.